LOEWER *v.* LONOKE RICE MILLING COMPANY.

Opinion delivered December 15, 1913.

1. MOTION TO MAKE COMPLAINT MORE SPECIFIC—SUFFICIENCY OF COMPLAINT.—Where plaintiff brought suit against defendant on an itemized account which it made an exhibit to its complaint, the complaint and exhibit held sufficient to advise defendant of the items with which he was charged, and a motion to make the complaint more specific, was properly overruled. (Page 66.)

2. ACCOUNT—SURCHARGING AND FALSIFYING.—An account in which items have been omitted or entered through fraud, mistake, accident or undue advantage, may be falsified or surcharged even after there has been a settlement and payment of the balance found due. (Page 66.)

3. ACCOUNT—SURCHARGING AND FALSIFYING—BURDEN OF PROOF.—One who seeks to falsify or surcharge an account for fraud, mistake, accident or undue advantage, must proceed within a reasonable time after the discovery of the fraud, and the onus is upon him to establish the fraud by clear and convincing evidence. (Page 67.)

4. ACCOUNT—SURCHARGING AND FALSIFYING.—Where the settlement between an employee of a corporation, who was also a director thereof, and the corporation, was based upon credits on the corporation's books, were entered at the direction of the employee, by the bookkeeper, without the knowledge or consent of the other directors, the settlement is not conclusive, and the account may be opened to correct the credits. (Page 67.)

5. CORPORATIONS—CREDITS DUE EMPLOYEE.—In an action by a corporation against an employee for amounts due it, evidence held to show the defendant entitled to credits on the accounts between the parties. (Page 69.)

6. CORPORATIONS—PERSONAL INTEREST OF AGENT IN TRANSACTIONS.—Where appellant was employed by appellee to buy rice for it, he

could not act for appellee in the sale and purchase of rice belonging to himself. (Page 71.)

7. CORPORATIONS—AUTHORITY OF OFFICERS.—Evidence held to show authority of the manager to purchase rice from defendant (an employee of the corporation), for a price more than that ordinarily paid. (Page 72.)

8. CORPORATIONS—DUTY OF AGENT TOWARD CORPORATION.—The director of a corporation who is acting as its agent to purchase rice for it, is bound to deal with the utmost good faith toward the corporation. (Page 73.)

9. CORPORATIONS—SALARY OF EMPLOYEE.—Appellant *held* under the evidence to be entitled to salary for an extension of time over the time specified in his original contract. (Page 77.)

10. CORPORATIONS—COMPENSATION FOR SERVICES—AMOUNT.—Where appellant was employed by appellee and was to receive a percentage of the net profits on seed rice, he is *held* entitled only to compensation on seed rice sold by him and not on seed rice sold by appellee through other employees. (Page 78.)

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; decree modified.

STATEMENT BY THE COURT.

Appellee is a corporation engaged in the business of rice milling at Lonoke. On May 21, 1909, appellant "was employed as rough rice buyer, and to render such other assistance as would be necessary during the period beginning July 1, 1909, and ending April 1, 1910, at a salary of $1,000 for said time." The contract further provided "that he be allowed 25 per cent of the net profits on seed rice, the amount of seed rice handled to be left to the manager and the directors." The contract further provided as follows: "That he (Loewer) be paid one-half of the profits on twine sold to this date, the mill to get all profit from twine sold after this date." And, further, "Mr. Loewer's time is extended beyond April 1 on to the end of the milling season, if necessary. The amount due him is to be paid at the end of the season, except he is to be allowed to pay one-half on his assessment for stock in cash and credit him with balance out of amount due him on salary. Mr. Loewer is to pay his own expenses while in our employ, except when out of

our district. The quantity of rice to be bought and price to be fixed by the directors.''

The appellee brought this suit against the appellant on an itemized account which it made an exhibit to its complaint, and, after setting up the contract, appellee alleged that on the 1st day of December, 1909, appellant quit appellee's employment, and went to work for other parties at a salary of $200 per month; that during the time of the employment, appellant was a director of the plaintiff corporation, and that while so employed, and without the knowledge of the appellee and for the purpose of defrauding it, he directed its bookkeeper to credit him with divers and sundry amounts to which he was not justly entitled, among the items there being $798 rebate on the Leroy rice crop, $407.36 on the Schenebeck rice crop, and $1,000 on his salary, and $80 on binder twine, when he was only entitled to a credit on the binder twine account of $19.29.

Appellee alleged that it was not aware of such false entries until it had its books audited, and that it was entitled to the sum of $3,920.06, as shown by the itemized statement, which it claims shows the correct amount due appellee, and for which it prayed judgment.

The appellant, after filing a motion to make the complaint more specific, which was overruled, answered, denying that his employment was to extend longer than the rice season, which he alleged would expire January 1. He denied the allegations of fraud, set up that all the items credited to him on the books were correct, and that the same were acquiesced in and approved by appellee and its authorized agents; alleged that the officers and directors made daily visits to the office where the books were kept, and made personal investigation of the books, and had full knowledge of the condition of appellant's account and each item thereof. Alleged that he purchased the rice crop of Schenebeck in gross for the sum of $3,-500, and reported that fact to the appellee, and that appellee refused to ratify the contract, and that appellant personally assumed the same and afterward sold same

to appellee for $1 per bushel, which amounted to about $3,900. He denied that he ordered the bookkeeper to enter the credits on appellee's books, and alleged that the credits of which appellee complains were made at the direction of the appellee, and that he was entitled to such credits.

By way of cross complaint, appellant alleged that he continued to work for appellee under the contract from July 1, 1909, until he had fully complied with his contract, although appellee ordered him to discontinue buying rice December 1, 1909. He alleged that he was entitled to the full amount of the salary named. Alleged that on December 11, 1909, the account between him and appellee showed a balance due appellant of $223.78, and that appellee gave him a check for that amount, and that this was a full and complete settlement, except that there was not included in this settlement the amounts due appellant for salary or profits on seed rice. He alleged that appellee paid him on his salary $500 on March 1, 1910, and $500 on April 26, 1910, and that at each time he requested an itemized statement, and appellee failed to furnish it to him. He specified that there was due him from appellee the following sums: On Leroy rice crop, one-half profit, $798; on Schenebeck rice crop, $316; advanced by him on Schenebeck rice crop, $2,544.90; one-half profits on binder twine, $80; one-fourth profits on seed rice, $1,-694.37, making a total of $5,333, for which amount he prayed judgment.

The matters at issue between the parties on the pleadings and the testimony presented by this somewhat complicated record could have been more easily and correctly determined, perhaps, had the matters and issues been referred to a master to state an account, but the chancery court did not see proper to do that, but considered the testimony at first hand and rendered a written opinion in which he took up various contested items between the parties, and made his findings thereon, and after entering the debits and credits as same were de-

termined from the testimony, rendered a judgment in favor of the appellee in the sum of $2,109.86, with interest thereon from July 1, 1910, at the rate of 6 per cent per annum, which amounted, at the time of the rendition of the decree, to the aggregate sum (including interest and principal), of $2,457.88, and from this decree appellant duly prosecutes this appeal. Other facts stated in opinion.

*C. F. Greenlee, G. Otis Bogle* and *Manning, Emerson & Morris,* for appellant.

*Thos. C. Trimble, Sr.,* and *Thos. C. Trimble, Jr.,* for appellee.

WOOD, J., (after stating the facts.). Appellant urges that the judgment should be reversed for the following reasons: First, because the court erred in not sustaining the motion to make the complaint more specific; second, because the settlement and payment made December 11, 1909, was conclusive of all claims prior thereto; third, because the court erred in its finding on the binder twine account; fourth, the Leroy rice account; fifth, the Schenebeck rice account; sixth, appellant's salary; seventh, the seed rice account; and eighth, error on rice sold Edmonds of $12.50. We will consider these in the order named.

1. Appellant asked that the complaint be made more specific "by specifically stating each item which it claimed appellant had converted to his own use, and by specifying the divers and sundry amounts which it alleged appellant had caused to be credited to himself to which he was not entitled, and specifically stating the amount for which appellee claimed judgment."

The account exhibited with the amended complaint showed the amount for which appellant asked judgment. Among the "divers and sundry amounts" which appellee alleged that appellant had procured to be credited upon his account with appellee were the following items: "$798 rebate on Leroy rice crop, $407.36 rebate on Schenebeck rice crop, $1,000 on salary, and $80 on binder twine."

The above items, in connection with the itemized statement of account, made an exhibit to the amended complaint, were sufficient to advise appellant of the specific items which he is alleged to have had credited to himself on the books of appellee. The court did not err in overruling the motion to make more specific.

2. An account in which items have been entered or omitted through fraud, mistake, accident, or undue advantage, may be falsified or surcharged even after there has been a settlement and payment of the balance found due. But one who seeks to falsify or surcharge an account for fraud, etc., must proceed within a reasonable time after the fraud has been discovered, and the *onus* is upon him to establish the fraud by clear and convincing evidence. *Roberts* v. *Totten,* 13 Ark. 609; *Lawrence* v. *Ellsworth,* 41 Ark. 502; *Weed* v. *Dyer,* 53 Ark. 155; *Lanier* v. *Union Mortgage Banking & Tr. Co.,* 64 Ark. 39; *Fletcher* v. *Whitlow,* 72 Ark. 234-240; 1 Cyc. pp. 460-467.

The facts concerning the alleged settlement by the payment made December 11, 1909, are substantially as follows: W. B. Hudson was the bookkeeper of appellee at that time. He testifies: "We gave Mr. Loewer $223.78 to balance his account, including that stock; also credits for the Leroy Planting Company, and for the Schenebeck business. Up to that time (December 11, 1900), Loewer owed the mill nothing. Mr. Loewer and I had a settlement on that day." And further on, he says: "We balanced off on January 5, 1910, and he was credited for the Leroy Planting Company, and also for the Schenebeck business."

The appellant testified concerning this alleged settlement, as follows: "I had a settlement with the company December 11, 1909. The mill was then indebted to me in the sum of $223.78, which was paid by check. I asked for a statement when we settled December 11, 1909. Hudson promised he would make it out, but he never did."

If the above were all the testimony, the appellant

would be correct in his contention that the payment of December 11, 1909, was a complete and final settlement to that date. But Hudson, the bookkeeper, testified further, as follows: "I was directed by Loewer to make these entries on the books. He went over the account with me when we made the settlement. He was superintendent of the mill and the rough rice buyer. He was supposed to tell me all trades made in buying rough rice. I got all my instructions from Loewer. All entries were made at his request. I was working for the company, and Mr. Loewer was a director. I was under his directions."

The appellant, in his testimony, does not deny that he directed the bookkeeper to enter the above items to his credit on the books of appellee. As to the Schenebeck crop, he says: "The mill was to take it at $1 per bushel, and I told Mr. Hudson to figure up what was coming to me and give me credit for it," thus affirmatively corroborating Hudson's testimony that the credit was entered at appellant's request. C. G. Miller, one of the directors of appellee, testified as follows: "The board never authorized Hudson to settle with Loewer for his salary of $1,000. We contended that we did not owe it. We never authorized the credit on seed rice or on the Leroy rice crop. Loewer had overdrawn his account, and he had had false entries made. The books for 1909, 1910 and 1911 were audited in 1911."

W. W. McCrary, another director, testified: "The board did not authorize Loewer to enter up the credits that were entered on the books or to draw funds on his salary. He never consulted with the directors as to the debits and credits placed on the books in regard to the Schenebeck and Leroy deals. Wheat and I went to the mill every day and went over the mail, but did not look over the books. We discovered the entries made at the direction of Loewer as to the rebate on the Leroy crop, the Schenebeck crop and the twine account when we had the books audited by Mr. Kuhn."

Under the above testimony to permit the payment of

December 11, 1909, to go as a final settlement of all items of account prior to that date would be tantamount to allowing appellant to make the settlement without consulting appellee. In other words, appellant made the settlement for appellee with himself; for the bookkeeper says that in entering up these credits to appellant on the books of appellee, he acted under the directions of the appellant. The appellee, under the testimony, is contending that appellant was not entitled to these credits and that the bookkeeper was not authorized to enter them on the books because they were false. Then to treat a settlement based thereon as final, would shut out inquiry and enable appellant to perpetrate a fraud upon appellee.

Since the other directors challenge the correctness of the credits and deny that appellant was entitled to them, and show that they were entered by the bookkeeper upon appellant's directions and without authority from appellee, and since they further testify that they had no knowledge that the bookkeeper had entered up these credits to appellant until the books were audited in 1911, we are of the opinion that the court was correct in holding, under the familiar principles of law above announced, that the alleged settlement of December 11, 1909, and the payment made on that date were not conclusive of the matter of account between appellant and appellee up to that time. The court properly opened the account for the purpose of correcting the items of credit above mentioned which appellee alleged were erroneous. That the appellee had no voice or part in the alleged settlement is established by clear and convincing testimony. In so holding, we do not overlook the testimony in the record tending to show that "after Hudson was made bookkeeper, Wheat and McCrary came into the mill every morning and went over the business of the day before; that they went over the accounts and saw what was paid for rice, how much was bought, etc.; that they had before that time had trouble with Apple, the former bookkeeper, and had taken in hand the financial part of it to keep it straight after Hudson came in;" nor the testimony tend-

ing to show that Loewer had nothing to do with the keeping of the books at the mill, and that he was not the superintendent of the mill. This testimony does not contradict the testimony of the bookkeeper and of appellant, himself, showing that the credits were entered at appellant's instance; nor does it contradict the positive testimony of the other directors that they had no knowledge that such credits were entered. The testimony, therefore, was not relevant on the issue of the finality of the settlement. The testimony, however, tending to show that the other directors of the appellee had the opportunity to know of these credits at the time or soon after they were made is relevant on the issue as to whether or not the credits were correct, and we come now to that question.

3. The record shows that appellant was to get one-half of the profit on binder twine sold up to the date when appellant was employed by appellee, towit, May 24, 1909. While appellant was employed on the above date, his service was not to begin until July 1, 1909.

Appellant testified that there was due him for commission on the binder twine account the sum of $80. The bookkeeper of appellee was asked to make a statement showing the profits made on binder twine up to the time appellant was employed by the appellee, and he made a statement showing that on December 4, 1909, appellant was credited on the books of appellee with commissions on binder twine account in the sum of $80. There is no testimony to show that this credit did not represent the correct amount of appellant's commission on binder twine up to the date that the contract was entered into. This was the credit as shown in the original account. That account was introduced in evidence; but in another exhibit which was afterward introduced, appellant was credited with a commission of $80 on binder twine account as of December 4, 1909, and was charged back with the same amount of commission as on July 1, 1910; but it was admitted by appellee that this binder twine account was error. And in still another account, which is designated

as "Loewer's account as corrected," appellant is credited as of December 4, 1909, with the commissions on binder twine account $19.29. The latter sum is the amount of commission on binder twine that the court allowed the appellant. This was ascertained, as shown by the twine account in the record, by taking into consideration the profit and loss on twine account from August 11, 1909, to July 1, 1910, which was $38.57. But, under the contract, appellant was to have one-half of the profits, as we have stated, on the twine that had been sold up to the date when his contract was entered into, and he testifies, and there is nothing to show to the contrary, that on July 1, 1909, when he entered appellee's service, and also at the time the credit of $80 commission on binder twine was entered in his favor, the bookkeeper figured it up for him, and he was entitled to that sum. The court therefore erred in not allowing him that amount.

4.   Appellant and one Martin were equal partners in the Leroy Rice Planting Company. Appellant therefore owned a one-half interest in what we will hereinafter call the "Leroy rice." As to this rice, he could not represent both himself and the appellee .in making the sale, for he was the seller, and appellee the purchaser. He testified that his partner was willing to sell his share of the crop at ninety cents per bushel, but that he (appellant) was unwilling to sell his interest at that price. There were 3,490 bushels of the Leroy rice. It was all delivered to appellee's mill as one lot. Appellant informed one Hoetzel, who was the manager of the mill at that time that he could buy Martin's share of the rice at ninety cents, and Hoetzel bought it at that price. Appellant's half went in, but he told the bookkeeper that he was not selling his at that time. Afterward, the price went up to $1, and he sold his rice to Hoetzel. It was worth $1 at that time. Appellant and Hoetzel had just bought for appellee the Herron rice at that price, and appellant states that he could have sold his rice at that time to the Wheatley Rice Mill at $1.02 per bushel. His rice was an excellent quality, and well worth the price

that he sold it for. Hoetzel, who acted for the appellee in buying this rice, testified that he was in the employ of appellee as manager of the mill; he supervised the buying of rough rice and sold clean rice. Loewer, in buying rice, was under his instructions. The first agreement of the directors was that not more than ninety cents was to be paid for rice, and they bought all they could get at that price. Then prices went up, and they had to pay more, but not until the matter was taken up with the members of the board. He says the Leroy rice was all hauled in as one lot. He bought Martin's part at ninety cents. There was no trade at that time with Loewer. Witness bought Loewer's rice ten days later at $1 per bushel. He paid Loewer no more for his rice than he would have paid anybody else at that time. They were paying in the market as much as $1.05 for rice of the same grade as they paid Loewer $1 for.

The testimony of the directors, on the other hand, was to the effect that they had not authorized Hoetzel to buy rough rice, and that they had fixed the price of rough rice to be purchased by Loewer at not more than ninety cents per bushel, unless otherwise instructed by the board.

Appellant testified that the bookkeeper had given him credit on the books for a part of Martin's rice, but that he was not entitled to that and did not ask for it, and he asked him to charge it back to appellant.

Hudson, the bookkeeper testified that the books showed that the entire crop of the Leroy rice was purchased at ninety cents per bushel for the Honduras and seventy-five cents per bushel for the Japan, but that later the appellant directed him to credit on his account the sum of $798, the same being a rebate on the Leroy rice crop, he being allowed ten cents per bushel on all the Honduras rice. He states that this entry was made without the knowledge or consent of the board of directors.

The directors testify that they never authorized Loewer to take such a credit, and that afterward when they took up the matter with Loewer with a view of

adjusting the same, that he then stated that his credit should have been only $349, inasmuch as he had only a half interest in the Leroy rice crop, and his part of that crop was 3,490 bushels.

Hudson, the bookkeeper, testified that appellant never told him that he was not selling his half of the Leroy rice crop. The books showed that at the time of that sale the entire crop was sold to the mill and entered one-half to the Leroy Rice Planting Company, and one-half to appellant at ninety cents. The rebate of $700 was entered at appellant's request. He gave him a credit of ten cents per bushel. The credit was not made by error. Appellant asked for the rebate of ten cents per bushel on the whole, not half, of the Leroy crop. "He came back and said it was error, and had me charge him with the difference."

One of the directors testified that if appellant held his half of the Leroy rice back, and sold his half afterward to the appellee, that at the time of such sale the price of rice had gone down, and he should have obtained less than he claims.

The testimony of the directors was to the effect that appellant did not consult with the board with reference to selling his half of the Leroy rice crop to appellee. The board did direct him to pay more than ninety cents for other crops.

It is difficult to reconcile the conflicts in the testimony as to the credit of $349 in favor of appellant appearing on the books of appellee, entered as a rebate in favor of appellant, soon after the sale of the Leroy rice crop to appellee. This credit also appears in the statement filed with appellee's original complaint; but in the "corrected statement of account" filed with the amended complaint, "to correspond with the proof," the credit does not appear, and the chancery court held that the item of $349 entered as a credit to appellant on the Leroy rice crop, should be eliminated.

The burden of proof was on the appellee to falsify the account as taken from its books of original entry con-

cerning this item, and we are of the opinion that the testimony is not of such clear and convincing character as to show that this was a false credit. On the contrary, we are of the opinion that the preponderance of the evidence is in favor of the appellant's contention that he should be allowed this credit. He was the seller of his own rice, and not the buyer, and the party with whom the transaction was made, and who assumed to represent the appellee, corroborates appellant in his statement as to the sale of the Leroy rice. While the testimony for the appellee tended to show that Hoetzel, the manager, had no express authority to make such purchase, yet the fact remains that he and appellant both testify that he did have authority to make it, and the proof is undisputed that he made other purchases of rough rice about that time, some of these being from other directors of appellee.

Both appellant and Hoetzel, the manager, who negotiated with appellant for the purchase of the Leroy rice, testified that they talked with the president, Mr. Wheat, concerning these transactions, and it was shown that Wheat and Hoetzel bought rice at that time for appellee at from ninety-seven cents to $1.06 per bushel. Among the rice so purchased was Wheat's rice at ninety-seven cents per bushel, and the proof shows that this rice was a grade lower, and was worth several cents less per bushel than appellant's rice.

The preponderance of the evidence shows that Hoetzel did have authority to make the purchase from the appellant, and this being true, there is no conflict as to the purchase of appellant's rice at the price of $1 per bushel, as he contends. The court therefore erred in eliminating the credit of $349 in favor of appellant on the Leroy rice crop.

5. The Schenebeck rice crop stands on an entirely different footing from the Leroy rice crop. It was the duty of appellant to buy that rice for appellee, and not for himself. This transaction must be scrutinized with the greatest care, for appellant was not only employed

by the appellee to buy rough rice for it, but he was at the same time a director of the appellee, and in his relation, both as the employer's agent, and as a director of the company, he was bound to deal with it in the utmost good faith. See 10 Cyc. p. 790, and cases cited in note; 2 Thompson on Corp. pp. 1223, 1224.

Appellant claims that he bought 3,907 bushels of rice from one Schenebeck for which he paid $3,500. To the contract of purchase, he signed appellee's name, as well as his own name individually. At that time he paid $10 of his own money to bind the contract, but his own evidence shows that he afterward collected this $10 from the appellee. The rice was shipped to appellee with bill of lading attached, and the same was paid by appellee. After he purchased the rice, he notified the directors that he had made some good money for the rice mill by purchasing rice at a bargain. Appellant afterward paid on the last shipment of this rice the sum of $2,544.90, same being paid by his own check on the Bank of Lonoke, which sum was included in an amount credited on books of appellee as "Schenebeck crop balance."

Appellant testified concerning this transaction that the mill was to take it at $1 per bushel. The contract was signed like all other contracts by him for the milling company, for he wanted the milling company to have the benefit of it. He "reported the transaction to Hoetzel, and Hoetzel said he reported it to the directors." "Hoetzel refused to accept the contract the day after I bought it," says appellant. "I told Schenebeck when he brought the rice in, that the mill had refused to ratify the contract, and that he would have to look to me for the money. The first shipment of the rice was to the Lonoke Rice Milling Company, and they paid for it. I was at the mill when the last shipment came in, and gave my check for it. They had no money at the time. I had money to my credit."

Hoetzel testified that Loewer reported to him that he had bought the Schenebeck rice crop, and had given $3,500 for it, and that he (Hoetzel) told Loewer that ap-

pellee could not take it. He discussed it with the board, and they thought as witness did, but left it to witness. Witness told Loewer that they could not ratify the contract, but would pay $1 per bushel. "He said that was all right. We told him if there should be either profit or loss, he would have to stand it."

The directors, McCrary and Miller, testified that Hoetzel had no authority to pay Loewer $1 per bushel for the Schenebeck crop. The board ratified the contract of buying the Schenebeck rice in the field by paying a part of the consideration, and as soon as Loewer came in, he was paid the $10 which he had paid out to bind the contract. The rice was sent to the mill with draft attached. The board did not authorize Loewer to take the profit over and above $3,500. The board did not authorize Loewer to buy rice for himself; did not refuse to purchase the Schenebeck crop at $3,500. Hoetzel was discharged from appellee's employment. Hoetzel, however, denied that he was discharged, but said that his contract was up, and he did not ask for re-employment.

The bookkeeper testified that Loewer represented that he had purchased the Schenebeck rice, and that he was entitled to what profit there was above $3,500. "This, to my knowledge," says he, "was not submitted to the board of directors. The $407.36 rebate is the difference, the profit, between $3,500 and $3,907.36. Loewer told me to credit him with the difference, which I did."

The chancery court was clearly correct in finding that the appellant was not entitled to this credit. The fact that he executed the contract in the appellee's name for the purchase of the Schenebeck rice, which it was his duty to do, and that he sent the bill of lading with draft attached to the appellee for payment, and the fact that he collected from appellee the $10 that he had advanced to insure the bargain, are all strong circumstances tending to show that the purchase was made for the appellee, and there is no testimony to warrant the conclusion that appellee refused to ratify the purchase. Therefore, appellant had no right to set up an interest in this pur-

chase antagonistic to that of his employer and without the knowledge and consent of the directors of the company, to have the credit representing the profits on this transaction, entered on his private account. This would be enabling appellant to take advantage of his relation to make a secret profit for himself to which the appellee, under the contract, was justly entitled.

Appellant, under the proof, could not assume to buy the Schenebeck crop for the appellee, and then make a profit out of the transaction by selling the same crop to the appellee, without the clearest proof that appellee had first repudiated the purchase from Schenebeck, and had affirmatively consented to treat the same as the purchase of appellant. Appellant undoubtedly was acting as appellee's agent in the purchase of this crop, and appellee would have been liable to Schenebeck for it had he not been paid.

6. Under the contract, Loewer was entitled to a salary of $1,000 for his services as rough rice buyer, beginning July 1, 1909, and ending April 1, 1910, or a period of nine months, with the provision that his time was to extend beyond April 1 to the end of the milling season, if necessary. A decided preponderance of the evidence tends to show that appellant discharged his duties as rough rice buyer to the end of the season, that is, for a period of five months beginning July 1, 1909, and the testimony tends to show that at the end of this season he was instructed not to buy any more rice, as the season had been a disastrous one. Long after the season had closed and after appellant had quit the employment of the appellee and entered into a contract with other parties, appellant was credited on the books of the appellee with the amount of his salary, $1,000. At that time no objection was made, because appellant had quit the service of appellee. Appellant, notwithstanding he had entered the employment of another, testified that he held himself in readiness to buy rice for the appellee if it called upon him to do so. The testimony nowhere

shows that the appellee called upon him after that time to buy any rice.

While the contract specified that appellant was to render "such other assistance as would be necessary" to the end of the milling season, there is testimony tending to show that appellant did serve appellee, after it had instructed him not to buy any more rice, in making sales of seed rice, and that his services in that respect were accepted.

It is manifest, from the contract, taken in connection with the other testimony, that the principal service that appellant was to render appellee was in the capacity of rough rice buyer. If "his assistance in any other capacity" was deemed necessary, it was the duty of the appellee to have called upon him for such assistance. Under the contract, it was for appellee to determine what other assistance, if any, was necessary, and the record does not disclose that appellee notified appellant that any other assistance than that of buying rough rice was necessary during the period covered by his contract. It is true there is some testimony tending to show that when not away from the mill, Loewer was to be there in the capacity of superintendent, and that when the manager was away, he was to look after the running of the mill. But there is no evidence to show that appellant failed to discharge any of the duties he was called upon to perform under his contract during the period for which he was employed. But appellant shows that he was ready, after the rough rice buying season had closed, to render any assistance to appellee that it should deem necessary.

The appellant was entitled to his salary. The court therefore erred in reducing appellant's salary to $555.55. He should have been allowed the full amount of his salary, and he is entitled to a credit therefor, in addition to what the court found, of $444.45.

7. The contract provided that appellant was "to be allowed 25 per cent of the net profits on seed rice, the amount of seed rice handled to be left to the manager and the directors." The court construed this contract

to mean that appellant was to be allowed 25 per cent of the net profits on seed rice sold by him, and that it did not include profits on seed rice sold by appellee through employees other than appellant.

While the contract is not entirely free from ambiguity on this point, we are of the opinion that the court correctly construed it, and did not err in holding that appellant was only entitled to $699.65 as one-fourth of the profits on the seed rice sold by him.

8. The appellee, in its account, charges appellant with the sum of $50 for rice sold J. D. Edmonds. The appellant and Edmonds both testified that Edmonds bought only thirty bushels of rice, paying $1.25 per bushel, making $37.50. The appellant therefore should only be charged that sum.

The court entered a decree in favor of appellee for $2,109.86, exclusive of interest. Appellant does not specifically allege any errors in this decree other than those discussed in its brief. Therefore, we must assume that the decree of the court was correct in all other particulars except those in which we have found error to exist.

The errors entering into the decree against appellant, as above ascertained, are as follows: On binder twice, $60.71; on Leroy rice crop account, $349; on salary, $444.45, and on rice sold to J. D. Edmonds, $12.50, making a total of $866.66. The decree therefore will be modified by eliminating these errors, and a decree will be entered here in favor of the appellee for $1,243.20, with interest from July 1, 1910, and the costs of appeal will be adjudged against appellee.