GULF REFINING COMPANY *v.* WILLIAMS ROOFING COMPANY.

4-7558                                    186 S. W. 2d 790

Opinion delivered March 26, 1945.

*E. W. Moorhead,* for appellant.

*Thweatt & Stubblefield,* for appellee.

MILLWEE, J.   This suit was filed in the Pulaski Circuit Court and later transferred to chancery.   Appellant, Gulf Refining Company, seeks to recover $975.84 from appellee, Williams Roofing Company, which amount was deducted and withheld by appellee from its running account with appellant.   The account was based on invoices showing the sale of oil products and services by various authorized retail dealers of appellant. Under the arrangement between the parties, these invoices were assigned to appellant by the various Gulf retail dealers who obtained credit from appellant upon their purchases of gasoline and other oil products.

On July 24, 1939, B. J. Dixon, who had charge of the trucks of appellee, wrote the Gulf Company in Little Rock stating that his company operated several trucks out on the road and requested that appellant issue eight courtesy or credit cards for the use of the drivers of these trucks. In response to this request, the credit cards were issued, numbered one to eight, respectively.   The face of each card contained the customer's name, registered number, and address which were placed on the card by addressograph plate by appellant, together with the card or serial

number which was placed thereon by appellant by typewriter. Upon receipt of the cards and before delivery to the truck drivers, Dixon wrote across the face of each card "Good for Truck Only" by typewriter. The reverse side of each card contained a provision that the registered holder assumed full responsibility for payment for all merchandise or services obtained on credit by any person through its presentation, and that loss or theft of the card be immediately reported.

The truck drivers of appellee would present the credit card to authorized Gulf retail dealers in purchases of Gulf products on credit. Upon presentation of the card the dealer prepared an invoice upon printed forms furnished or approved by appellant by writing in the spaces provided therein the date, the customer's number, name and address, the card or serial number, the license number of the vehicle and the quantity and price of the merchandise purchased. This invoice would then be signed by the truck driver. The dealer would then sign the printed form appearing on the invoice assigning "the within account" to appellant. These invoices were sent to appellant by the dealer and appellant would forward monthly statements to appellee for payment.

Gerald Huckaby was the driver of one of appellee's trucks which had the name "Williams Roofing Co." and "No. 4" printed on the truck. On the night of September 5, 1939, Huckaby purchased two quarts of oil from the Bradley Service Station, Gulf dealer in Jackson, Mississippi, and delivered credit card No. 4 to the dealer's employee. This employee took the card into the service station to make out the invoice which Huckaby signed. The credit card was not returned to Huckaby and he left without it. The following day he stopped at the service station and asked for his credit card, and was informed by another employee that the card could not be located at the station, but that he would obtain it from the employee who had waited on Huckaby the night before and mail the card to appellee at Little Rock. B. J. Dixon testified that he notified the Little Rock office of appellant of the loss of the card by Huckaby a week or ten days later when the

card did not arrive. The employees of appellant denied receiving such telephone call or notice.

The employee of the service station who waited on Huckaby embezzled the credit card and embarked on a 90-day orgy of buying from Gulf dealers in Mississippi towns by presentation of the stolen card and forgery of the name of Gerald Huckaby as ''Geral Huckaby.'' There were 223 of these forged invoices aggregating $975.84, which form the basis of this suit. The forger was at all times driving a 1934 Plymouth coach passenger automobile bearing a Mississippi license number. Most of the transactions occurred in small towns in Mississippi located near each other. Some of the dealers knew the forger and he had lived in several of the towns where purchases were made. Tires were sold for a passenger automobile and in some cases of a different size than was required by the vehicle the forger was driving. One dealer sold him two radios, one for his car and the other for his house, which were charged as tires and gasoline and the house radio was never delivered. Charges were made for 20 gallons of gasoline when the capacity of the car the forger was driving was only 15 gallons. In several instances cash was delivered upon false invoices made out for merchandise. Most of the invoices had a fictitious license number written in by the dealer which was different from the license number upon the automobile driven by the impostor.

Appellee paid its account for the months ending September 25 and October 25, 1939, which included forged invoices amounting to $275 without discovery of these forgeries. In checking their account for the month ending November 25, 1939, the forgeries were discovered and on December 6, 1939, appellee notified appellant that there seemed to be about $700 charged for merchandise upon such forged invoices and this account was not paid. On January 9, 1940, appellee wrote appellant referring to their letter of December 6, 1939, and claimed credit on their account for $975.84 which included the $275 already paid. In response to a letter from the auditor of appellant requesting a verification of the account as stated in

such letter, appellee on January 25, 1940, answered this request by denying the correctness of the account and again claimed credit for the full amount of the forged invoices.

Appellant alleged and now contends that the basis of this suit is an account stated for $975.84. We do not agree. It is well-settled that to constitute an account stated there must be an agreement, express or implied, on the part of the debtor that the account is correct. *Brown* v. *Southern Grocery Co.*, 168 Ark. 547, 271 S. W. 342, 40 A. L. R. 383; *Bell Lumber Co.* v. *Alewine*, 163 Ark. 164, 259 S. W. 373; *Godfrey* v. *Hughes & Hall*, 114 Ark. 312, 169 S. W. 958; 1 C. J. S. 707; 1 Am. Jur. § 28, p. 277.

Under the proof herein there was neither an express nor implied agreement on the part of appellee that $700.84 of the account was correct. On the contrary, appellee consistently disputed this part of the account from the time it discovered the forged items which it contained. The balance of $275 which was paid before discovery of the forgeries represents an account stated, correctness of which was impliedly admitted by the payment thereof. But an account stated may be surcharged and corrected for errors or mistakes. In the case of *Loewer* v. *Lonoke Rice Mill*, 111 Ark. 62, 161 S. W. 1042, it was stated: "An account in which items have been entered or omitted through fraud, mistake, accident, or undue advantage, may be falsified or surcharged even after there has been a settlement and payment of the balance found due. But one who seeks to falsify or surcharge an account for fraud, etc., must proceed within a reasonable time after the fraud has been discovered, and the onus is upon him to establish the fraud by clear and convincing evidence."

It was also held in *Continental Supply Company* v. *Robertson*, 166 Ark. 52, 265 S. W. 659, that an account stated may be impeached for mistake and that the party seeking to impeach the settlement is bound to show affirmatively the mistake alleged. The mistake alleged as to the $275 in the case at bar is affirmatively shown since it is stipulated by the parties that all items at issue were based on forged invoices. We think appellee moved with-

in a reasonable time after discovery of the forgeries to impeach this part of the agreement and appellant's right to recover thereon must be determined as though such items had never been assented to and had not become a part of an account stated.

One of the defenses offered by appellee is that the various Gulf retail dealers where the impostor used the credit card were the agents of appellant. It is insisted that there was collusion between the agents and the impostor, and that the knowledge of the agents was the knowledge of appellant. The contract between appellant and the Bradley Service Station, where the credit card was stolen, was introduced in evidence. In the case of *Arkansas Fuel Oil Company* v. *Scalletta*, 200 Ark. 645, 140 S. W. 2d 684, we held a somewhat similar contract made the dealer an independent contractor. The situation there involved is considerably different from the one here. But even if we so held here, such result would not profit the appellant. If these dealers were independent contractors and not agents of appellant, it necessarily follows that they were assignors of the forged invoices upon which appellant seeks to recover in this suit. These invoices, which were duly assigned by the respective dealers to appellant, were not negotiable instruments. They did not contain a promise to pay to order or bearer and appellant, as assignee, acquired no greater right than his assignors had under our decisions. It is well-settled that the assignment of a non-negotiable instrument passes the rights of the assignor subject to all defenses that would be available if the assignor brought suit direct on the instrument. *General Motors Acceptance Corporation* v. *Salter*, 172 Ark. 691, 290 S. W. 584; *General Motors Acceptance Corporation* v. *Sanders*, 184 Ark. 957, 43 S. W. 2d 1087; 6 C. J. S., § 116, p. 1166, Assignments, § 116. It follows that appellant took the invoices subject to all equities and defenses existing between appellee and the various dealers, although appellant may well be a *bona fide* purchaser for value without notice of such equities or defenses.

But, aside from the assignment features of the case, it is the contention of appellant that the working arrangement between the parties resulted in a definite contract according to the terms on the credit cards and the invoices, and under the custom which they had been following. Appellee concedes this to be true, and that there was at least an implied contract under which it was bound by the provisions stated on the credit card. It is appellee's contention, however, that it is not liable for items purchased for any vehicle except a truck. In response to this contention, appellant insists that it is not bound by the provision "Good for Truck Only" placed on the face of the card because this was done by appellee after receipt of the card. We think appellee had a right to place this provision upon the credit cards. When B. J. Dixon made the written request for issuance of the cards he notified appellant that they were for the use of trucks and the provision was typed on the cards to prevent truck drivers from buying products for their individual cars. While this provision restricted the liability of appellee, it also restricted liability of appellant to its dealers who were guilty of gross carelessness in selling items for use of a passenger automobile contrary to this provision of the card. The provision was for the benefit and protection of both appellant and appellee.

Appellee contends the agreement to assume responsibility for payment of merchandise obtained by any person by presentation of the card is in the nature of a contract of guaranty where the person who obtains the merchandise is an impostor. It is undisputed that appellee did not buy or contract for merchandise obtained by use of the card. If appellee is to be held liable, it is because it had assumed responsibility for the debt of the impostor in its acceptance and use of the card. A guaranty has been defined as a collateral undertaking by one person to answer for payment of a debt of another. 38 C. J. S. 1129. A guarantor is entitled to have his undertaking strictly construed. 38 C. J. S. 1182-3. A guarantor cannot be held liable beyond the strict terms of his contract. This rule was recognized in the case of *Dillard* v. *Wilson*, 186 Ark. 503, 54 S. W. 2d 294, where a letter from a land-

owner to a merchant to furnish supplies to a tenant was construed to authorize only such supplies as were reasonably needed, and any amount above that should be deducted from the merchandise claim as against the landlord.

It is true, the cards provide that appellee "assumes full responsibility for all merchandise, deliveries or service obtained on credit by any person by its presentation." It is necessarily implied from this broad guaranty that the person extending credit must do so in good faith, in accordance with the provisions of the card and subject to any limitation appearing on the face of the card. We think it is also necessarily implied that the person extending the credit should read the card and extend credit only as authorized by it. A casual look at the card would reveal that it is "Good for Truck Only" and this provision was binding upon the dealers regardless of which party placed the words there.

Appellant relies on the case of *Magnolia Petroleum Company* v. *McMillan*, Ct. of Civil Appeals, Texas, 168 S. W. 2d 881, which seems to be one of the few authorities to be found in cases of this kind. But the facts in that case are different from those in the instant case. There, the customer loaned his credit card to two other parties who were permitted to use the card for purchases which were for the use and benefit of the customer. Afterwards one of the borrowers of the card appropriated it to his own use and made purchases. The customer failed to notify the company of the loss of the card or that the borrower of the card had been instructed by the customer to return it. The case did not involve a limitation of use of the card for a truck and the good faith of the retail dealers was not in question. The testimony as to whether or not appellee notified appellant of the loss of the card is in sharp dispute in the instant case. Here, the credit card was stolen by a trusted employee of a distributor of appellant's products. Another such employee promised to recover and return the card. It was also the duty of the retail dealer to report the loss of a card, according to the testimony. When we consider these facts in connec-

tion with the further evidence of carelessness and, in some instances actual fraud, of the retail dealers, we are not impressed by appellant's argument that the truck driver of appellee was guilty of gross carelessness by allowing the card to be stolen, and that his act contributed most to cause the loss.

Appellant relies on the rule that where two innocent parties are the victims of a fraud, the loss must fall on the one who committed the initial act resulting in the loss, or upon the one whose acts contributed most to cause the loss. We are not convinced by the evidence that the loss must fall on either appellant or appellee. The culprit who committed the forgeries seems to be well-known and may be solvent. Up to the date of the trial herein he had not been required to answer for his criminal acts. Although that issue is not before us, it may well be that the loss should fall upon the various retail dealers who were without authority to deliver merchandise or cash to the impostor in the manner disclosed by the evidence.

The chancellor correctly dismissed the complaint of appellant for want of equity, and the decree is affirmed.