**SEARS, ROEBUCK AND CO., Petitioner,**

v.

**Waldo DUKE, Respondent.**

**No. B-1264.**

Supreme Court of Texas.

May 7, 1969.

Rehearing Denied June 25, 1969.

Key, Carr, Carr & Clark, Donald M. Hunt, Lubbock, for petitioner.

Evans, Pharr, Trout & Jones, John A. Flygare, Lubbock, for respondent.

REAVLEY, Justice.

Sears, Roebuck and Co. sued Waldo Duke for the price of merchandise sold to an impostor using the Sears credit card issued to Duke. The purchases were made within two weeks following Duke's loss of the card, and two weeks before either he or Sears had knowledge of its loss. After the jury absolved both parties of negligence, the trial court entered judgment for Sears. The Court of Civil Appeals ordered a new trial on the ground that Sears failed to offer sufficient proof of the exercise of care, on the occasion of each sale, to ascertain the identity of the credit card user. 433 S.W.2d 919. We hold that the Court of Civil Appeals imposed an incorrect duty on Sears, that Sears was entitled to rely upon the card alone as identification unless circumstances presented cause for further inquiry; and we remand the case to that court for reconsideration of points before it.

Duke and his wife lived in Lubbock, Texas and did business with the Sears store located there. In 1960 he signed a "Sears Revolving Charge Account Agreement" which began as follows:

"In consideration of your selling merchandise to me on Sears revolving Charge Account, I agree to the following regarding all purchases made by me or on my Sears revolving Charge Account identification * * *"

Two credit cards were issued with the account number and the name, Waldo N. Duke, on the front of the cards. There is no question raised at any point in this record but that the credit cards were the Sears "identification" to which the credit agreement refers. No additional terms of agreement appear on the back of the card, but there is a statement saying that the card is

the property of Sears and its loss or theft should be reported. Mrs. Duke signed as "authorized purchaser" and used one of the cards. The second card, unsigned, was carried by Duke with a number of other credit cards.

Duke was in New York on a business trip during the week of December 12, 1965, and he left his credit cards in a suitcase in his hotel room. Apparently the thief took the Sears card and a Sinclair Refining Company card, made a note of Duke's home address and signed "Waldo N. Duke" in his own handwriting on the Sears card. Presumably the card was taken December 13, and over $1,200 in merchandise was purchased in various Sears stores in the New York area within the following two weeks. On January 12, 1966, the credit department of the Sears store in Lubbock received notice of the unusual number of charges on the Duke account, and an inquiry was made to Mr. and Mrs. Duke. It was then that all of the parties first realized that the card was missing.

■ Duke has taken the position that he is not liable for the unauthorized use of his credit card, or for sales made by Sears to a stranger. There is no basis here for tort liability against Duke. The evidence clearly supports the findings of the jury to the effect that Duke was not negligent in the loss of his card or in the failure to report the loss to Sears. The jury has found that Duke was not negligent in failing to sign his card, and no point in that connection is presented to us. The question then is his contractual obligation, and this turns upon the construction of the words of the credit agreement set forth above. By that agreement Duke did more than promise to pay for merchandise he purchased. He promised to pay for "all purchases made on my Sears revolving Charge Account identification." The meaning we give to these words is that Duke will pay for *all* sales made by Sears to a purchaser identifying himself by the use of the credit card, which was issued by Sears upon receipt of the executed credit agreement.

Duke says that his obligation does not cover the sale to a person who is not in fact authorized to use the card or to make a purchase on Duke's credit. But this is precisely the purpose of this card: to satisfy the question of identity and of authorization. It is the reason why Duke was called upon to sign an agreement to pay not only for his purchases from Sears but for those made on the issued identification as well.

Duke further argues that if Sears wanted the agreement to have so drastic an effect as to bind him to pay for unauthorized purchases, Sears should have expressly so stated on either the agreement or the credit cards. We believe this to be the meaning of the agreement, and we do not regard this result to be so surprising in this credit card age. When Duke himself made a purchase and presented his credit card, he would not expect to be questioned. He should not expect the disguised thief to be.

■ The convenience of the credit card to both issuer and holder presents both with attendant risks. In general, and subject to contrary agreement by the parties, the one who can best control the risk should assume it. Thus, the issuer who puts a card into the mail without prior agreement with its intended holder should assume the larger part of the risk of improper use. After a holder accepts the card or agrees to pay for purchases made through its use, the risk of misuse is his unless and until he notifies the issuer otherwise. The holder can destroy his card if he feels that this is too great a burden. But if he is to carry it about, he must guard it as he does his currency if he is to avoid the expense of use by an impostor. If it is lost or stolen, by notifying the issuer, the holder shifts the risk of misuse back to the one who created the device. Texaco, Inc. v. Goldstein, 34 Misc.2d 751, 229 N.Y.S.2d 51 (N.Y.Mun. Ct.) aff'd 39 Misc.2d 552, 241 N.Y.S.2d 495 (App.Div., 1962).

■ The issuer of the card, or the seller of the goods, cannot ignore suspicious cir-

cumstances when selling to an impostor. The holder's liability has its limitations whether it be said that the issuer cannot avoid liability for his own negligence, or that the promise of the holder should be construed as being conditional upon the merchant's fulfillment of his obligation. See Comment: The Tripartite Credit Card Transaction: The Legal Infant. 48 Calif. L.R. 459, 483 (1960). In Gulf Refining Co. v Williams Roofing Co., 208 Ark. 362, 186 S.W.2d 790, 158 A.L.R. 754 (1945), the holder of the card had printed "GOOD FOR TRUCK ONLY" on the face of the credit card. It was held that the seller was required to observe the limitation. In an often cited Oregon case, the address on the credit card of the holder was shown to be in Oregon, while Idaho license plates were on the car used by the impostor when the purchases were made. This was held to raise a fact question as to the seller's care. Union Oil Co. of California v. Lull, 220 Ore. 412, 349 P.2d 243 (1960).

■ The cases differ as to the nature of the issuer-seller's duty of care, and as to the burden of proof. We hold that the seller need not demand more identification than the credit card as a matter of normal procedure. This is the function of the credit card, and it should be considered satisfactory evidence of identity of the holder or authorized user, unless the appearances or circumstances would raise a question in the mind of a reasonable seller. Proof that the seller did fail to use ordinary care in this respect is a defense to the liability of the holder of the card, and the burden of proof should be placed upon him.

■ The Court of Civil Appeals has ruled that the jury finding in favor of Sears, as to its care in ascertaining the identity and authority of the persons using the credit card, was not supported by sufficient evidence. However, that court has incorrectly placed the burden of proof upon Sears and has further enlarged the burden on Sears by holding that it could not discharge its duty of care by accepting the credit card as the only proof of identity. The judgment must therefore be reversed. We are unable to render judgment here in favor of Sears by holding, as Sears urges, that there was no evidence of its lack of care. Many purchases were made in the same stores, and one New York area store inquired of the Lubbock store as to Duke's credit standing in connection with one large purchase without any question being raised about the irregularity. The case must be remanded to the Court of Civil Appeals for reconsideration of the points of factual insufficiency to support the jury finding, which is a matter solely within that court's jurisdiction.

The judgment is reversed and the cause is remanded to the Court of Civil Appeals for further proceedings consistent with this opinion.