## Carl W. LEE *v.* B. J. VAUGHN

75-268                                                534 S.W. 2d 221

### Opinion delivered March 8, 1976
[As amended on denial of rehearing, April 12, 1976.]

*Walker, Campbell, McCorkindale & Young,* for appellant.

*Adams & Covington,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Carl W. Lee, guaranteed the payment of "the first $3,000.00" of a $4,000.00 note from Norvile and Rofena Akin, which Lee assigned to appellee, B. J. Vaughn, a resident of Lamesa, Texas; the guaranty agreement was also executed in Texas. The agreement provided that "If any monthly installment is past due more than 15 days, B. J. Vaughn shall promptly mail notice of that fact to the said Lee, P. O. Box 266, Bentonville, Arkansas, 72712." The Akins defaulted on the note, and appellant refused to perform his agreement, contending that appellee failed to give the requisite notice. Appellee instituted suit on the guaranty and the trial court, sitting as a jury,

rendered judgment for Vaughn in the amount of $2,921.13.[1] From the judgment so entered, appellant brings this appeal, contending that the lack of notice by appellee constituted failure of consideration with a resultant release of appellant from liability under the guaranty.

At the outset it should be mentioned that since the guaranty agreement was executed in Texas, and was to be performed there, Texas law should have governed the case; however, neither party gave notice of this fact to the trial court, and neither argues the point on appeal. Accordingly, the case must be decided under Arkansas law. *American Aviation, Inc.* v. *Aviation Insurance Managers, Inc.*, 244 Ark. 829, 427 S.W. 2d 544. In that case, we stated:

"Appellant did not plead the application of the Texas statutes [as required by Ark. Stat. Ann. § 27-2504 (Supp. 1975)], and the law of this state applies."

Returning to the main issue, the record reveals that Lee and Smith executed the assignment and guaranty on August 15, 1968. The note called for monthly payments of $100.00 by the Akins and they made seven monthly payments. In April, 1969, no payment at all was made, and only $41.32 was paid in May. Four more payments were made before the Akins missed the payment for October, 1969; likewise, a payment was missed in February, 1970, and no payments were made after March 18, 1970.

Sometime during 1968 or 1969 Vaughn moved to Nashville, Tennessee, apparently leaving the management of his Lamesa interests in the hands of his office manager, and his Lamesa attorney, Robert Snell. The evidence does not reveal that any type of notice was given to either Lee or Smith until "right at the end of 1969 or the early part of 1970 ***."

---

[1]C.E. Smith was Lee's co-guarantor on the note, for the same amount, but he died while this litigation was pending, and appellee did not revive the action against Smith's estate. Though Smith may be referred to *infra* as Lee's codefendant at the trial level, his estate is not a party to this appeal.

In answer to interrogatories, Snell stated that he had some earlier calls from Smith, and an office notation reflected a call from Smith in January, 1969; of course, this was before any default at all occurred. Snell was not able to state that he had received any calls from Lee, the witness only stating "perhaps" from Lee, but he said that most of his conversation was with Smith. According to Snell, on April 3, 1970, he directed a letter to Smith and Lee wherein he requested each to sign a statement, which he had enclosed, that "it will not be necessary from month to month for Mr. Vaughn to notify you about the default in payments in order to keep the $3,-000.00 guarantee in force." The statement to that effect was not executed and returned to Snell, and Lee denied that he ever received this letter. On August 12, 1970, another letter was directed to Smith and to Lee wherein Snell stated that he thought he had the executed statement, heretofore referred to, in his files, but found that he did not, and he again requested the execution of the waiver of notice. Lee stated that he received this notice.

In answer to Interrogatory No. 3, Snell stated that he talked with Smith near the end of 1969 or early part of 1970 and advised that the Akins were having difficulties making the payments, and he stated that Smith and Lee, together with Akin, on March 24, 1970, came to his office to discuss the matter. Thereafter, he wrote the letter requesting the waiver. In answer to Interrogatory No. 4, Snell stated that Smith had indicated that he would sign the statement, but he (Snell) never did receive it.

Vaughn testified that he called Smith on March 18, 1970, informing the latter that the Akins were delinquent on their note payment, and stated, "I presumed he would call Mr. Lee."

Lee testified that he was never notified in writing by either Vaughn or his attorney that the Akins were in default; that had he been so notified as the monthly payments became delinquent, he could have, and would have, honored the guaranty agreement.

We are of the opinion that the trial court erred in render-

ing judgment against Lee. Admittedly, the failure to make payment in April, 1969, the partial payment in May, and the failure to make payment in October were never communicated to Lee, and it appears from the record that Lee's first notice of any default came when he was told of that fact in March, 1970; as earlier pointed out, the first attempt to give either Smith or Lee written notice was the letter of April 3, 1970.

We have held that a guarantor is entitled to have his undertaking strictly construed and that he cannot be held liable beyond the strict terms of his contract. *Gulf Refining Company v. Williams Roofing Company*, 208 Ark. 362, 186 S.W. 2d 790; *National Bank of Eastern Arkansas v. Collins*, 236 Ark. 822, 370 S.W. 2d 91. In the last mentioned case, we quoted 24 Am. Jur. *Guaranty* § 71, p. 158, as follows:

> "A guarantor, like a surety, is a favorite of the law, and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent."

However, the instant appeal presents a question of first impression for this court; *i.e.,* apparently no Arkansas case has construed a guaranty contract that contained an express requirement of notice of the principal's default. It seems clear, however, that the great majority of states (all but one, Michigan) that have considered a like situation have reached a conclusion in conformity with the Restatement of Security, § 136, where it is stated:

> "Subject to the rules pertaining to negotiable instruments, the surety's obligation to the creditor is not affected by the creditor's failure to notify him of the principal's default *unless such notification is required by the terms of the surety's contract.*" [Our emphasis].

The leading state decision on the point appears to be *Yama v. Sigman*, 114 Col. 323, 165 P. 2d 191, in which the debtor was obligated to make biweekly payments, and the guaranty was conditioned upon immediate notice of default. The Colorado Supreme Court held that under such an agree-

ment the guarantor could not be held liable after the debtor's default, when the creditor failed to prove that he had given the necessary notice — "their failure in this respect relieves the defendant of all liability under his guaranty." In a New York decision, *Pergament* v. *Herrick Credit Corp.*, 200 N.Y.S. 2d 535, the rule is summarized as follows:

> "Where a contract of guarantee specifically provides for notice of default, the failure to give such notice discharges the guarantor's obligations [citations omitted]. The guarantor may limit his liability as such by whatever conditions he may see fit to impose, and non-compliance with them will preclude recourse to him. As stated above, his undertaking is strictissimi juris and cannot be extended beyond the fair import of its language."

Ohio courts adhered to the same principle in *Lakemore Plaza, Inc.* v. *Shoenterprise Corp.*, 188 N.E. 2d 203 (Ct. Cmn. Pleas):

> "Where a guarantor attaches a certain condition or conditions to his agreement, such condition or conditions must be construed in favor of the guarantor, and the failure of a creditor to strictly comply with any condition or conditions invalidates the guaranty."

Other courts that have adopted this analysis are the Wisconsin Supreme Court, *Electric Storage Battery Co.* v. *Black*, 27 Wis. 2d 366, 134 N.E. 2d 481; the District of Columbia Court of Appeals, *United States Plywood Corp.* v. *Continental Casualty Corp.*, 157 A. 2d 286; and the Pennsylvania Superior Court, *Barati* v. *M.S.I. Corp.*, 243 A. 2d 170. In the *United States Plywood* decision, the court stated:

> "Since the foundation of any rights of the donee or creditor is the promisor's contract, it follows that his rights are restricted by the terms of the promise and any conditions, express or implied, affecting them. A stipulation for notice of default is a condition of liability which may always be imposed. The weight of authority holds that where the notice provision is reasonable and is stated as a condition precedent to the right of instituting legal action, failure to observe it will discharge the surety."

Lee was entitled to the protection that he had insisted upon in guaranteeing the note; after all, the note contains an acceleration clause under which the entire indebtedness could have become immediately due and payable following the April, 1969 default. While Vaughn alleged in a second amendment to his complaint that Smith and Lee "were partners in the transaction herein sued upon," the record contains no evidence to that effect, nor is such a contention argued by appellee. Actually, the guaranty agreement itself indicates the contrary, since the notification clause called for both Smith and Lee to be notified by mail at two separate addresses.

Reversed.