TERRI J. STRAUSS, APPELLANT, v. SQUARE D COMPANY, A CORPORATION, ET AL., APPELLEES.

270 N. W. 2d 917

Filed October 25, 1978. No. 41837.

Thomas A. Wurtz, for appellant.

No appearance for appellee Square D Co.

James R. Jones and John W. Wynkoop, for appellee Chizek.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

SPENCER, C. J., Pro Tem.

This is an action for unemployment compensation benefits. The District Court affirmed the holding of the Department of Labor Appeal Tribunal that claimant, Terri J. Strauss, voluntarily left her employment, and disqualified her from receiving benefits for a period of 9 weeks. Claimant appeals. We affirm.

Claimant was employed at Square D Company, Inc., hereinafter referred to as employer. From February 1976, through February 1977, claimant worked a 3:30 p.m. to 12 midnight shift. At approximately 8:30 p.m., on February 15, 1977, claimant bumped her head on a press and wrenched her neck. She claims this happened when a coworker operating an unregulated air hose blew dirt into her face. Claimant completed her shift that evening and worked a complete shift the next day. On February 17, 1977, claimant consulted her personal physician and obtained a disability certificate for February 17, 1977. Claimant then called her employer and requested a leave of absence for the rest of the week and the following week. She was instructed to bring in a disability certificate. When she presented the

certificate from her personal physician she was told it was not sufficient to warrant an extended leave of absence. She was also advised she could not miss more than 3 consecutive days without further medical documentation. She was told she would be excused from work on February 18, 1977, and that after the long weekend she could report for light duty on February 22, 1977, or obtain a leave of absence upon presentation of sufficient medical evidence.

The collective bargaining agreement between the claimant's union and the employer contained the following provisions, so far as material herein: "Article XI Leaves of Absence Section 1. A written leave of absence shall be required in all cases when an employee is absent from work for more than three (3) consecutive work days, except as hereinafter provided. Any employee wishing a leave of absence shall make a request in writing to the personnel department, setting forth in detail the reason for such request.

"Section 2. Upon presentation of satisfactory medical evidence from a registered physician in each instance, leaves of absence for personal illness or injury shall be granted. However, the Company may require an examination by its own physician (at its expense), prior to granting the leave or any extension thereof, or prior to permitting the employee to return to work."

Claimant contends her disability was a tension headache. She testified she called her employer on the 22nd of February and each day thereafter to inform it she was unable to work. When she called on February 25, 1977, she was informed that her employment was terminated because she had missed 3 consecutive work days without good cause. This termination was pursuant to the provision of the collective bargaining agreement between the company and the claimant's union, set out above.

There is no question claimant was apprised of the

need to obtain a written leave of absence which would be issued upon the presentation of satisfactory medical evidence. Claimant had applied for and received medical leave on two prior occasions.

On September 10, 1976, claimant had been issued a written warning for failure to return to work at the expiration of a leave of absence. The warning notice stated: "On Tuesday, September 7, 1976, you did not return from leave of absence as scheduled. You were aware of the leave requirements. Your doctor, however, has verified you need to be off work. It is your responsibility to provide medical evidence for approval of a medical leave. Failure to properly follow the leave of absence procedure in the future will be reason for disciplinary action."

Claimant's employment records demonstrate she was absent a considerable number of days during the year she was employed by the employer. She had been warned about her absenteeism. On January 7, 1977, the employer issued a written reprimand informing claimant she could be suspended or discharged if her attendance did not improve.

Claimant denied the personnel supervisor told her the disability certificate she submitted was insufficient. She testified she believed she was following the correct procedure and that medical evidence specifying the dates she was unable to work had not been required on previous occasions. Claimant did admit her physician had not told her to stay away from work.

The claims deputy, following an investigation, determined claimant had left work voluntarily without good cause. The notice of determination mailed to claimant reads as follows: "You left your employment with Square D Co. on 2-23-77 (after vacation pay) when you failed to work after three (3) consecutive working days. It has been shown that you did, on 2-18-76 (sic), request a medical leave of absence. It has not been shown, however, that you

did, at the time of this request, submit positive proof of disability (in the form of a disability statement with inclusive dates of disability) as requested by the employer. It has been shown that you were, prior to and at the time of this request, aware of the company policy governing medical leaves of absence. Because you failed to report for work, it is held that you quit voluntarily without good cause."

As authorized by section 48-628, R. S. Supp., 1976, the claims deputy disqualified plaintiff from receiving benefits for the week ending February 26, 1977, plus an additional 9 weeks. This determination was affirmed by the Department of Labor Appeal Tribunal with the finding that it would not have been unreasonable for the claimant to have complied with the alternatives given her. These alternatives were: Reporting for light work that was available; or, returning to her doctor and obtaining a more definite statement of her injuries. The Appeal Tribunal found the testimony indicated that this would have been satisfactory medical evidence for the employer and a medical leave of absence would have been granted.

Section 48-639, R. R. S. 1943, provides for a review de novo upon the record in the District Court. Both parties assume such review would be unconstitutional, in view of recent decisions of this court, beginning with Scott v. State ex rel. Board of Nursing, 196 Neb. 681, 244 N. W. 2d 683 (1976), and both assert the scope of review is limited to a determination of whether the decision of the Appeal Tribunal was supported by substantial evidence; whether it acted within the scope of its authority; and whether its action was arbitrary, capricious, or unreasonable. The function of the Appeal Tribunal, however, is "To hear and decide disputed claims, * * *." § 48-633, R. R. S. 1943. It exercises quasi-judicial power as distinguished from legislative power. Consequently, the statutory provision for a de novo review is valid.

See Snygg v. City of Scottsbluff Police Dept., *ante* p. 16, 266 N. W. 2d 76 (1978).

Claimant's main contention is she did not quit her employment but was discharged. Thus, she argues, benefits cannot be denied on the basis that she "left work voluntarily without good cause;" rather, the issue is whether she was "discharged for misconduct." The disqualification period is the same in either event under section 48-628, R. S. Supp., 1976, except that benefits may be denied altogether if the individual was discharged for misconduct which was "gross, flagrant, and willful, or was unlawful."

There is substantial evidence to support a finding that claimant was discharged for misconduct. The District Court did not specifically find she had voluntarily left work, but succinctly determined that the ultimate decision of the Appeal Tribunal was correct because "by her acts of commission and omission the plaintiff has deprived herself of the unemployment compensation benefits which she seeks." Whether claimant voluntarily left work without good cause or whether she was discharged for misconduct, the result is the same. It is a familiar principle that a proper judgment will not be reversed because the trial court gave an erroneous reason for its rendition. See Riederer v. Siciunas, 193 Neb. 580, 228 N. W. 2d 283 (1975).

The judgment is affirmed.

AFFIRMED.