DALE DOCKENDORF, DOING BUSINESS AS CORSICA
LIVESTOCK SALES CO., APPELLANT, v. LAVOY ORNER
ET AL., APPELLEES.

293 N. W. 2d 395

Filed June 17, 1980. No. 42579.

Kneifl, Kneifl & Forrest, for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott, for appellee U.S.F.&G.

Heard before KRIVOSHA, C. J., BRODKEY and WHITE, JJ., and RONIN and GARDEN, District Judges.

GARDEN, District Judge.

This is an appeal from an order of the District Court for Lancaster County, Nebraska, sustaining a motion for summary judgment filed by the defendant United States Fidelity & Guaranty Company (U.S.F.&G.) to plaintiff's third amended petition to recover on a surety bond.

Plaintiff's petition sets forth two causes of action, the first sounding in contract for the unpaid purchase price for cattle sold and delivered by plaintiff to other defendants and against defendant U.S.F.&G. as surety. The second cause of action alleges misrepresentation and fraud on the part of other defendants, and alleges that such fraud and misrepresenta-

tion was known or should have been known to the defendant U.S.F.&G.

The facts of the case are that on July 8, 1974, defendant U.S.F.&G., as surety, and defendant Donald Moran, as principal, entered into the surety agreement, which is the subject of this appeal. Defendant Moran was registered as a cattle dealer with the Nebraska Department of Agriculture. The bond was required for licensing and registration, both with the Nebraska agency and with the Packers and Stockyards Administration, U.S. Department of Agriculture. See, Nebraska Livestock Dealers Licensing Act, Neb. Rev. Stat. §§ 54-1701 to 11 (Reissue 1978); federal packers and stockyards act, 7 U.S.C. §§ 201-17a (1976), and regulations promulgated thereunder, particularly 9 C.F.R. § 20.33 (1977).

LaVoy Orner, an additional defendant in this action, held an agent's card from the Nebraska Department of Agriculture, issued under defendant Moran's name and bond.

Defendant Orner testified in his deposition that he had done business under the name ''Don Moran Livestock'' after his own bond was revoked by the packers and stockyards agency in April 1975 and he became registered under Mr. Moran's name, to use Mr. Moran's bond.

During 1974 and 1975, Herbert Andrews, an additional defendant herein, worked for Mr. Orner, and traveled for him to Corsica, South Dakota, to purchase cattle at the Corsica Livestock Sales Co. barn.

From December 1974 through September 18, 1975, Mr. Orner, through his agent, Herbert Andrews, purchased cattle from the Corsica, South Dakota, sales auction, charging some of the purchases. After January 1975, these purchases were charged under the name of Donald Moran, and the cattle were sold under Donald Moran's bond. Mr. Orner further testified in his deposition that he had no way of disputing the amount claimed due by the plaintiff, $115,733.92.

Herbert Andrews testified in his deposition that he worked as LaVoy Orner's agent and carried an agency card issued by the Nebraska Department of Agriculture and given to him by Mr. Orner. Mr. Andrews worked for Mr. Orner for a period from 1972 through 1975, except for a period of 10 to 12 weeks. In 1975, his Nebraska agency card was changed and he worked under the name "Donald Moran Livestock." Both Donald Moran and LaVoy Orner had told him to purchase cattle. Mr. Andrews met the plaintiff in 1973 or 1974 and purchased cattle from the plaintiff, as agent for Mr. Orner and Mr. Moran. The plaintiff also sold a substantial amount of cattle over the telephone to Mr. Orner but in Mr. Moran's name. For a period of time, Mr. Andrews was charging cattle for Mr. Orner every week at the plaintiff's sale ring.

Plaintiff brought his action on March 18, 1976, against the defendants upon their default in payment for the balance due in the sum of $57,061.30 for cattle purchased during the period of December 1974 to October 1975 and against U.S.F.&G., on the surety bond issued to defendant Donald Moran, alleging that the said surety is liable for its principal's default in payment to a maximum amount of the bond in the sum of $18,000.00. The petition was later amended to allege a balance due of $115,733.92.

Defendant U.S.F.&G. filed an answer in the foregoing action, in which it "allege[d] affirmatively that plaintiff did not file a claim in writing within 120 days of any of the transactions complained of as required by the bond, and is, therefore, not entitled to recover anything from this defendant." U.S.F.&G. thereafter filed a motion for summary judgment and a hearing was held thereon on September 7, 1978. On December 27, 1978, the District Court sustained the motion for summary judgment as to both causes of action and dismissed both causes of action. It is from that order that the plaintiff has appealed to

this court. For the reasons hereinafter stated, we affirm the action of the District Court.

The bond in question contained the following conditions:

> (d) Any claim for recovery on this bond must be filed in writing with either the Surety, or the Trustee if one is named, or the Administrator, Packers and Stockyards Administration, United States Department of Agriculture, Washington, D.C. 20250, and whichever of these parties receives such a claim shall notify the other such party or parties at the earliest practicable date. All claims must be filed within 120 days of the date of the transaction on which claim is made. Suit thereon shall not be commenced in less than 180 or more than 547 days (*which is approximately 18 months*) from the date of the transaction on which the claim is based.
>
> . . . .
>
> (f) The Surety shall not be liable to pay any claim for recovery on this bond if it is not filed in writing within 120 days from the date of the transaction on which the claim is based, or if suit thereon is commenced less than 180 or more than 547 days (*which is approximately 18 months*) from the date of the transaction on which the claim is based.

(Emphasis in original.)

Plaintiff did not file a claim in writing within 120 days and, as a result thereof, defendant U.S.F.&G. contends, plaintiff is barred from recovery. Plaintiff takes the position that the failure to file the claim pursuant to condition (d) does not bar recovery so long as suit is commenced not less than 180 days nor more than 547 days from the date of the transaction on which the claim is based. We agree

with the interpretation of U.S.F.&G.

It is well settled in Nebraska that "[t]he proper construction of a written contract is a question of law to be determined by the courts." *Durand Associates, Inc. v. Guardian Inv. Co.,* 186 Neb. 349, 353, 183 N.W.2d 246, 249 (1971). The proper role of the trial court and the jury in matters of interpretation of agreements was set out by this court in *Don J. McMurray Co. v. Wiesman,* 199 Neb. 494, 497-98, 260 N.W.2d 196, 199 (1977):

> The trier of fact is to determine a question of interpretation of an integrated agreement if the question depends on the credibility of extrinsic evidence or on a choice among reasonable inferences from extrinsic evidence. [Citations omitted.] When the terms of a contract and the facts and circumstances that aid in ascertaining the intent of the parties are insufficient to raise an issue of fact, the interpretation of the contract is a matter of law. [Citations omitted.]

Plaintiff does not contend that any actions or words of the parties or other events outside the language of the bond are in any way relevant to an interpretation of the meaning of the bond's provisions. There is no suggestion that any extrinsic evidence could be relied upon to aid in the interpretation of the bond. Therefore, there is no issue of fact for a jury, and resolution of the meaning of the bond is a matter of law for this court to determine.

A basic tenet of contract construction is that a contract's meaning is to be ascertained by examining the contract document as a whole. As this court held in *First Mid America, Inc. v. Palmer,* 197 Neb. 224, 248 N.W.2d 30 (1976), in construing a written instrument, the court must look to the agreement in its entirety.

The language of paragraph (d) of the bond, quoted above, was not chosen by the insurer, but was recom-

mended by the federal government through regulations promulgated by the Secretary of Agriculture under the authority of the packers and stockyards act. The entire bond is identical to the form suggested in a note following 9 C.F.R. § 201.33, one of those regulations. When viewed as a whole, the bond in question is not ambiguous. The conditions prescribed by the bond are two in nature. The first is the timely filing of a claim in writing. The second relates to the timeframe within which litigation must be commenced. Both conditions must be complied with to allow recovery under the bond.

Notice-of-loss provisions are common in fidelity policies and bonds and, as this court has recognized, the generally accepted rule of law is that, in the absence of a statute to the contrary, they are valid and enforceable. "Where the giving of notice of loss within the prescribed time is made a condition precedent to liability, failure to comply with such provision prevents recovery . . . ." 45 C.J.S. *Insurance* § 1092 (1946).

It is clear that in the present case plaintiff failed to file a claim in writing within 120 days of the date of the transaction on which claim is made. Since plaintiff failed to satisfy the first condition, recovery under the bond will not be allowed.

As previously stated, this case was disposed of by the trial court on a motion for summary judgment filed by the defendant U.S.F.&G. That motion was sustained. The rule is that a summary judgment may be granted only where there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1975). No fact issues remain as to either of plaintiff's causes of action as against the defendant U.S.F.&G. All defendant U.S.F.&G. did was to issue the bond. It performed no acts from which it could be concluded that it, in any way, defrauded plaintiff. Accordingly, the judgment for

U.S.F.&G. should be affirmed.

The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of, without the necessity, expense, and delay of trial, those cases where there is no genuine claim or defense. *Partridge v. Younghein,* 202 Neb. 756, 277 N.W.2d 100 (1979).

In view of what we have stated above, we affirm the judgment of the trial court.

AFFIRMED.