LEO A. DALY COMPANY, APPELLANT, V. OMAHA-DOUGLAS
PUBLIC BUILDING COMMISSION, APPELLEE.

324 N.W.2d 252

Filed September 3, 1982. No. 44069.

Stephen L. Gerdes of Matthews & Cannon, P.C., for appellant.

Herbert M. Fitle, City Attorney, and Charles K. Bunger, for appellee.

Heard before McCOWN and HASTINGS, JJ., and BRODKEY, J., Retired, and STUART and HIPPE, D. JJ.

PER CURIAM.

Plaintiff, Leo A. Daly Company, appeals to this court from the judgment entered by the District

Court for Douglas County, following trial to the court sitting without a jury, in favor of the defendant, Omaha-Douglas Public Building Commission, in an action brought by the plaintiff to recover for extra services and expenses performed by the plaintiff in connection with the construction of the Omaha-Douglas County Civic Center, or, to be more specific, for services and expenses of the plaintiff in the subsequent repair or rebuilding of a slurry wall along Farnam Street which had collapsed during the course of construction of the civic center. We affirm the judgment of the District Court.

By way of background, the record reveals that on October 9, 1968, Daly and the Omaha-Douglas County Civic Center Corporation entered into an agreement in which the civic center employed Daly to serve as an architect for the construction of the Omaha-Douglas County Civic Center, which contract was subsequently assigned to the Omaha-Douglas Public Building Commission. This contract for architectural services shall hereinafter be referred to in this opinion as the 1968 contract. As previously stated, on January 19, 1974, almost 6 years after the execution of the 1968 contract, a slurry wall along Farnam Street and adjacent to the civic center collapsed during the course of the construction. Almost immediately thereafter, to wit, on January 30, 1974, the various parties who had performed work or supplied materials for the construction of the civic center entered into an agreement to cooperate for the purpose of minimizing any delay in the construction of the building and any losses that might ultimately result therefrom. This agreement was signed by the Omaha-Douglas Public Building Commission, County of Douglas, City of Omaha, Leo A. Daly Company, Metropolitan Utilities District, P & Z Co., Inc., and Hawkins Construction Company, and will hereafter be referred to in this opinion as the seven-party agreement, or as the 1974 agreement.

Subsequent to the execution of the seven-party agreement above referred to, the plaintiff performed corrective work on the collapsed slurry wall, and the action brought by plaintiff in the District Court was for the purpose of recovering its labor costs and outside consulting costs with reference to the replacement of that wall. Plaintiff's action did not involve recovery on a quantum meruit theory, nor did it involve claims of unjust enrichment, those doctrines not having been pleaded.

It will be helpful at this point to examine the pleadings upon which the case was tried before the district judge. In its second amended petition, filed in the District Court for Douglas County on October 6, 1978, plaintiff alleges the execution of the October 9, 1968, agreement and its subsequent assignment to the defendant. The petition further alleges that on January 30, 1974, following the collapse of a portion of the foundation wall on January 19, 1974, the plaintiff, defendant, and others entered into the seven-party agreement, and a copy of that agreement is attached to the petition. Plaintiff specifically alleges as follows: "Plaintiff performed all of its duties under the contract of October 9, 1968 including extra services and disbursements incidental to unusual circumstances as provided in sections III (B) of Exhibit 'A' and *as required by Exhibit 'D'.*" (Emphasis supplied.) Exhibit D, referred to, is the seven-party agreement.

Plaintiff further alleges that the extra services were rendered and expenditures made at the request and with the approval of the defendant; that the defendant is the proper party to bring a suit to determine the liability for the collapse, but has not done so; and, further, that plaintiff submitted to defendant a statement for the extra work but that defendant has refused payment thereof.

It is to be noted that the plaintiff in its petition pleads both the 1968 contract and the 1974 agree-

ment and alleges that the work was performed under both contracts, thereby admitting judicially in its pleading that the work was performed under the 1974 agreement as well as under the 1968 contract.

The 1968 contract between the Commission and the architect sets out the duties of the architect and divides such duties into basic services for which an agreed fee was to be 6 percent of the construction costs, to be paid monthly as certain levels of construction were reached. This case does not involve this type of charge. However, the 1968 contract also provides for the payment of extra services of the architect "if performed due to unusual circumstances," and provides that the extra expense shall be paid for by the nonprofit corporation as a "Multiple of Direct Personnel Expenses," including, generally, making planning surveys and special analyses; making measured drawings of existing construction; revising previously approved drawings or specifications to accomplish changes ordered by the nonprofit corporation; consultation concerning replacement of any work damaged by fire or other cause during construction, and furnishing professional services of the type set forth in the preceding paragraph of the original contract as may be required in connection with the replacement of such work; arranging for the work to proceed should the contractor default due to delinquency or insolvency; providing for contract administration and observation of construction; preparing "as-built" drawings, showing construction changes in the work, etc.; and the cost of all reproductions of drawings, and the cost of any special consultants, etc.

In its brief on appeal plaintiff contends that it is entitled to recover its expenses because of the provisions of the 1968 contract, which it claims is applicable. Defendant, however, claims that the work in reconstructing the slurry wall was performed under the provisions of the 1974 agreement and not under

the 1968 contract, and that plaintiff's right to recover depends upon the terms and provisions of the seven-party agreement, a copy of which is attached to plaintiff's second amended petition and was also received in evidence during the trial. Because of the importance of this issue, we discuss this latter agreement in some detail.

The purpose of the seven-party agreement entered into by all the parties engaged in the construction of the civic center is well summarized in the opening paragraphs of that agreement, and we quote those paragraphs in full: "WHEREAS, the Omaha Douglas Public Building Commission, hereinafter called 'Commission', engaged Leo A. Daly Company, hereinafter called 'Daly', to design and supervise the construction of a building designated in the construction contract as The City of Omaha and Douglas County Administration Building, and now known as the Omaha Douglas Civic Center, to be located on the block bounded by 18th and 19th Streets and by Farnam and Harney Streets, Omaha, Nebraska; and,

"WHEREAS, the City of Omaha, hereinafter called 'City', and Douglas County, hereinafter called 'County', each have representatives among the membership of said Commission; and,

"WHEREAS, the Commission awarded the general contract for the construction of said building to Hawkins Construction Company, hereinafter called 'Hawkins'; and,

"WHEREAS, Hawkins entered into a subcontract with P & Z Co., Inc., for the construction of the slurry wall system surrounding the building; and

"WHEREAS, a casualty occurred on January 19, 1974 involving a partial collapse of the North slurry wall along Farnam Street, a partial collapse of the pavement of Farnam Street, the breaking of two water mains owned and maintained by Metropolitan Utilities District, the breaking of a storm sewer and

breaking away of the subgrade of Farnam Street owned and maintained by the City of Omaha, and damages to material and equipment installed, stockpiled and located in the basement of the building and the excavation; and,

"WHEREAS, the cause or causes of said casualty is undetermined and is under investigation; and,

"WHEREAS, the parties hereto, each denying liability for said casualty but each wishing, without admitting liability for any part of said casualty and without prejudice to their individual rights and positions with respect thereto, to cooperate for the purpose of minimizing any delay in the construction of said building and any losses that may ultimately result therefrom:

"NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties hereto mutually agree as follows:

"1. Each party may, through such representatives, including experts, as it may wish, conduct its own separate investigation of the cause or causes of said casualty at the site of the occurrence; . . . .

"2. Daly, at its own expense *pending final determination of liability for the casualty as settled and compromised among the parties or as finally determined by courts of competent jurisdiction, shall*:

"(a) If necessary, in Daly's opinion, design a support system for the West slurry wall along 19th Street;

"(b) Design a support system for Farnam Street, including stabilization of the paving;

"(c) Design a replacement wall for the collapsed North section of the slurry wall system;

"(d) Investigate and designate any remedial work required; and,

"(e) Instruct Hawkins when to remove the debris and remanants [sic] and instruct Hawkins as to the sequence in which they are to be removed as provided hereinabove." (Emphasis supplied.)

There is a similar provision in the agreement affecting the contractor Hawkins, and paragraph 3 of the seven-party agreement provides with reference thereto: "3. Hawkins, at its own expense pending final determination of liability for the casualty as settled and compromised among the parties or as finally determined by courts of competent jurisdiction, shall:

"(a) Perform the construction work directed by Daly; and

"(b) Remove and preserve the debris and remanants [sic] as directed by Daly as hereinabove stated; provided however, that if a party wishes to have any item or items removed and preserved, the removal and preservation of which requires unusual equipment or skill, the removal and preservation of said item or items shall be arranged for and be done at the expense of the requesting party."

The agreement then provides with reference to the duties of the city that the city shall keep 19th Street closed to vehicular traffic between Harney and Farnam Streets until the last slab of concrete is poured, and shall also keep such parts of Farnam Street closed to vehicular traffic between 18th and 20th Streets as public safety requires.

We particularly call attention to paragraph 5 of the 1974 agreement, and set it out verbatim, as we believe that it is of great value and assistance in determining the meaning and purpose of the seven-party agreement. That provision is as follows: "5. *It is specifically understood and agreed that the above and foregoing agreement is entered into without prejudice to any right of any party hereto, each party denying liability for the aforedescribed casualty and each party preserving all of its legal rights against every other party hereto and against all other persons, associations, partnerships, corporations or entities whatsoever.*" (Emphasis supplied.)

To this point we have discussed, in brief, the con-

tents of plaintiff's second amended petition and the two contracts involved in the action attached to and incorporated in said petition. The defendant herein filed an amended answer to plaintiff's second amended petition on August 7, 1980, admitting certain of the allegations of the petition, specifically admitting that plaintiff and defendant, and others, entered into the seven-party agreement, denying certain other allegations contained in plaintiff's petition, and specifically alleging: "FURTHER ANSWERING, Defendant affirmatively alleges that the Agreement, Exhibit 'D' mentioned hereinabove, precludes Plaintiff from recovering alleged fees from Defendant until final determination of liability for collapse of the foundation wall. Such liability is presently being litigated in the following pending actions: [then follow the titles and docket numbers of five specific cases]." Finally, in its concluding paragraph defendant alleges: "Defendant, for further answer to the Second Amended Petition of the Plaintiff heretofore filed herein, alleges and states that any work performed by the Plaintiff in connection with rebuilding of the slurry wall after its collapse on January 19, 1974 was done voluntarily by said Plaintiff for its own benefit, under the terms of Exhibit 'D' [the seven-party agreement] attached to Plaintiff's Second Amended Petition, and without any request of any kind or nature by this Defendant." The defendant then prays that plaintiff's second amended petition be dismissed with prejudice and that it recover its costs expended in the action.

On October 31, 1980, the plaintiff filed its reply to the amended answer of the defendant, denying, among other things, that the liability of the plaintiff to the defendant is now being litigated in the cases set out in defendant's answer, but alleging that the defendant has voluntarily withdrawn therefrom and that the pending cases cannot, as between plaintiff and defendant, determine liability. Plaintiff also al-

leges that the seven-party agreement does not relieve the defendant of all liability to the plaintiff, but only defers it, and further alleges that the defendant is estopped from reliance on the agreement on account of its failure to seek the determination referred to in the seven-party agreement. Finally, plaintiff alleges that defendant has permitted the right of action to determine "liability" to be barred by the statute of limitations, and also alleges that the seven-party agreement was unenforceable because of want of consideration.

The foregoing constitutes a resume of the contents of the pleadings of the parties and the two contracts in question introduced at the trial, following which, as previously stated, the District Court judge hearing the matter found for the defendant and against the plaintiff.

A review of the record in this case convinces us that the work performed by the plaintiff in connection with the reconstruction of the collapsed slurry wall was performed under the provisions of the seven-party agreement and not the 1968 contract. Lest it be argued that the two contracts constitute an integrated contract, we point out that Restatement (Second) of Contracts § 209 at 115 (1981) defines "integrated agreements" as follows: "(1) An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement.

"(2) Whether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule.

"(3) Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression."

We believe in the instant case that the second contract, the seven-party agreement, cannot in any sense be construed as part of the original architectural contract, for the reasons that the 1974 agreement was entered into almost 6 years following the 1968 contract and the two contracts were not between the same parties, although two of the parties were the same as in the 1968 contract. Black's Law Dictionary 726 (5th ed. 1979) states in its definition of an "integrated contract": "An agreement is integrated where the parties thereto adopt the writing or writings as the final and complete expression of the agreement and an 'integration' is the writing or writings so adopted."

Clearly the two contracts involved in this case cannot be considered as an integrated contract, but we are convinced that the seven-party agreement was a separate and independent contract, not connected with the 1968 contract. Plaintiff admits in its petition that its work was "required" by the terms of the 1974 agreement. It is the general rule under Nebraska law that the proper construction of a written contract is a question of law to be determined by the courts. *Dockendorf v. Orner,* 206 Neb. 456, 293 N.W.2d 395 (1980). We interpret that agreement as providing, as set out in paragraph 2 thereof, that Daly (and also, in paragraph 3, Hawkins) shall perform the required repair work as set out in said sections "pending final determination of liability for the casualty as settled and compromised among the parties or as finally determined by courts of competent jurisdiction."

It is clearly implied in said agreement that once the question of liability for the casualty is determined in the manner specified, the parties may thereafter proceed to recover their damages against the party so found liable. There is absolutely nothing in the record before this court indicating a final determination of liability for the casualty, ei-

ther as settled or compromised or as finally determined by any court of competent jurisdiction. We need go no further in disposing of this appeal.

We have examined the other errors and issues argued by plaintiff and find that they are without merit.

In its judgment in this case the District Court held that the plaintiff was not entitled to recover under either the 1968 contract or the 1974 agreement, its reasoning being that under the 1968 contract, as the court interpreted it, payment for other work must be requested and agreed to by the defendant. The court found that there was no evidence whatsoever that the defendant agreed to pay plaintiff for the additional work. The court also found, with reference to the seven-party agreement, that the defendant "did not make any agreement to pay for anything or, indeed, to do anything."

As is apparent from what we have stated earlier in this opinion, we rest our decision on other grounds. However, it has long been the rule in this jurisdiction that a proper judgment will not be reversed even if the trial court did not give the right reason for its rendition. *Strauss v. Square D Co.,* 201 Neb. 571, 270 N.W.2d 917 (1978); *Riederer v. Siciunas,* 193 Neb. 580, 228 N.W.2d 283 (1975). We conclude that the District Court reached the right result in this case and that its judgment should be, and hereby is, affirmed.

AFFIRMED.

HIPPE, D.J., concurring in the result.

With all respect, the opinion's reliance on the seven-party agreement is misplaced.

First, the architect's attorney made it clear to the trial judge that the original agreement, not the seven-party agreement, was its claimed basis for recovery. The same position was taken in the briefs and argument on appeal. It seems that the plaintiff's attorney, the defense attorney, the trial judge,

and now the five judges on this panel all agree on one point: the plaintiff cannot recover because of anything in the seven-party agreement.

It seems odd, therefore, that pages and pages of the opinion discuss that agreement and conclude it does not form a basis for recovery. No one ever said it did.

Second, the parties to the seven-party agreement wanted it to be "without prejudice to any right of any party hereto." The opinion, in contrast, kicks the plaintiff out of court because of it.

The background for the agreement shows why it should be given no effect one way or the other.

To build this slurry wall, the contractor poured the wall with concrete and reinforced it by connecting anchors in the ground to the wall with cables. After excavating inside, the serrated clamps holding the cables apparently slipped and the wall caved in. A street had fallen, sewer lines were broken, the building under construction was in jeopardy, and the walls had to be replaced under different circumstances than when they were originally designed and built. In addition, the cause of the collapse had to be investigated, and all parties wanted a complete and fair investigation.

In this setting, the seven parties agreed to ground rules for investigating the collapse and assigned responsibilities to get the streets open, the sewer running, and the building construction back on track.

It is clear that this agreement studiously proceeds upon three bases. First, no one admits any fault for the collapse. Second, no one agrees to pay a dime to anyone for anything. Third, all parties did not want the agreement to prejudice any right, and each "preserv[ed] all of its legal rights against every other party hereto and against all other[s] . . . ." I therefore believe it should be given its expected ineffectiveness and not be the basis for deciding this case.

The third reason the seven-party agreement should have nothing to do with the result of the case involves some confusing pleading.

The architect anticipated the defense that this agreement would be used to claim that its extra work was volunteered and that it expected no payment for it. This is because the agreement has the following language: 'Daly, at its own expense pending final determination of liability for the casualty as settled and compromised among the parties or as finally determined by courts of competent jurisdiction, shall: [redesign the wall].''

The problem comes from the fact that the architect had no way to see that the liability for the casualty could be determined. It was not the purchaser of any product and thus able to claim a breach of warranty. It was not the user of any product and thus able to claim a defective product. It was not a foreseeably damaged person to claim that any work was negligently done. Only the defendant owner, the contractor, or the subcontractor for the wall could make any of those claims. Since they did not do it, after all these years, Daly claimed that the owner was estopped to use the quoted language as a shield. It would permit the defendant to profit from neglecting to pursue the alleged wrongdoers.

This is the reason the seven-party agreement found its way into the plaintiff's pleading. It was explained at length to the trial court during the trial and to this court in briefs and argument. It was never intended that the plaintiff was claiming it did the extra work because of that agreement. It has maintained throughout that it did the work because of the original 1968 architect's agreement, and that agreement is the one it claims entitles it to a recovery.

Therefore, I am of the opinion that the case should be decided by analyzing the original 1968 architect's agreement and not by reliance upon the 1974 agreement.

One good reason for doing so is that the 1968 agreement is the only agreement between the plaintiff and the defendant alone. It is the agreement that outlines who should pay for what, and on what basis. This lawsuit involves a dispute between an architect and a building owner for the payment of extra services performed after a building construction project was well underway. The 1968 agreement is the written contract that deals with those points.

It provides that the architect is obliged to perform extra services above and beyond the design, drawings, bid letting, and building supervision. The contract also provides that the owner will pay for that extra work by reimbursing the architect 2.5 times actual out-of-pocket labor time for architectural employees, and reimburse for outside consulting fees that the architect had to pay. The clause providing for this reimbursement is one dealing with many extra services that may come up. It deals with extra work made necessary to replace parts of the job that were damaged by fire or other cause. Other clauses for extra work deal with other kinds of extra work made necessary for various reasons.

Some of the extra-work clauses expressly provide that the architect has to ask first before going ahead and doing the extra work. Some of the clauses do not say anything about asking first. The clause for casualty, relied upon by plaintiff, is one of those silent ones.

The point actually litigated to the trial court was whether the architect was required to ask first before it could do this extra work and expect payment for it. The architect claimed that it did not have to; the owner claimed that it did have to. The owner won.

There was no issue that the architect actually got prior approval before doing the work. It simply did not do it. As I have already explained, the seven-party agreement should not be used as a prior ap-

proval because that would give it effect on this dispute, and it should not have any effect.

I am of the opinion that the architect would have to ask first before being entitled to pay for the extra work done. The clause is silent on this point, but it refers to the preceding clause, which does require prior approval. The contract has language in other parts that requires prior approval before the architect is entitled to recover out-of-pocket expenses for hiring outside consultants. Also, to hold otherwise would give the architect a blank check to do whatever extra work it deemed necessary and the owner would have no way to control costs if it did not have a veto over extra expenses.

This is the reasoning given by the trial judge in deciding that the plaintiff was entitled to no extra fee. It seems adequate reasoning to me. It simply finds as a fact that the acts performed by the architect do not fit the requirements of the contract to entitle it to the claimed reimbursement. That is quite a different thing from legally construing a contract.

The court's opinion claims this case stands for three rules of law.

First, it claims that construction of contracts is a judge's task, not a fact finder's job. The contracts here do not call for any construction. The meaning is not ambiguous, just complicated. If this case had been tried to a jury, the holding would mean it should have been decided by the court as a matter of law. That rule will take a lot of juries out of a lot of breach of contract cases. All such cases have one side claiming that it did what was called for by the contract and the other side claiming contra. This fact of litigation should not subject cases involving fact issues to 2 days in court, 1 at the trial and another on appeal.

The second rule of law deals with the rule of integrated contracts. That rule simply defines when the parol evidence rule applies. No parol evidence

was used in this case, and it was not an issue in any way.

I would respectfully suggest that this case stands for no rule of law at all. It simply involves applying extraneous facts to a complicated written contract and concludes that the facts do not fit the rights defined by that contract. Anything further is dictum.

I agree that the trial court's decision should be affirmed, but I cannot agree with the reasons given in the court's opinion for doing so.