STATE OF NEBRASKA EX REL. L. TIM WAGNER, DIRECTOR OF INSURANCE OF THE STATE OF NEBRASKA, APPELLEE, V. AMWEST SURETY INSURANCE COMPANY, APPELLEE, AND STRATEGIC CAPITAL RESOURCES, INC., CLAIMANT, APPELLANT.

738 N.W.2d 805

Filed August 17, 2007.   No. S-05-1267.

Steven N. Lippman, of Rothstein, Rosenfeldt & Adler, and Sean M. Reagan, of Reagan Law Offices, P.C., L.L.O., for appellant.

John H. Binning, Robert L. Nefsky, and Jane F. Langan, of Rembolt Ludtke, L.L.P., for appellee L. Tim Wagner.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

Saxton, Inc., entered into four lease agreements with Strategic Capital Resources, Inc. (Strategic), then contracted with Amwest Surety Insurance Company (Amwest) to issue four corresponding lease bonds under which Amwest agreed to provide payment to Strategic in the event that Saxton defaulted. Amwest became subject to an order of liquidation, pursuant to which Amwest's lease bonds were canceled and a statutory liquidator was appointed to manage claims made against Amwest.

Following the termination of the lease bonds, Strategic provided Amwest with written notice of Saxton's default. The liquidator denied all of Strategic's claims. Strategic appealed. Because Strategic failed to comply with the express provisions of the lease bonds before the lease bonds were canceled, we affirm the denial of Strategic's claims.

## STATEMENT OF FACTS

In 1999, Saxton entered into four lease agreements with Strategic. As security for Saxton's performance under the lease agreements, Saxton contracted with Amwest to issue lease bonds. Pursuant to each lease bond, Amwest agreed to provide payment to Strategic, up to a predetermined amount, in the event that Saxton committed a default under the lease. Amwest issued four lease bonds, each bond corresponding to one of the four leases.

Three of the four lease bonds contained the following provision:

> This bond is executed by the Principal [Saxton] and Surety [Amwest] and accepted by the Obligee [Strategic] upon the following express conditions:

. . . .

> 2. In the event of any default of the Principal herein, the Surety shall be given written notice by the Obligee of such default within thirty (30) days after such default by certified mail to the Surety . . . .

The other lease bond provided:

> A default shall be deemed to have occurred on the part of the Principal [Saxton] if the Principal shall fail to perform fully its obligations under the lease agreement within the time set forth therein. Obligee [Strategic] has given Principal written notice of such default, and Principal has failed to cure such default within the time period required by the lease agreement.

On June 7, 2001, Amwest became the subject of an "Order of Liquidation, Declaration of Insolvency, and Injunction" entered by the district court for Lancaster County. Pursuant to the liquidation order, L. Tim Wagner, Director of Insurance for the State of Nebraska, was appointed as statutory liquidator (Liquidator). The Liquidator appointed Horizon Business Resources, Inc. (Horizon), as the authorized claims/litigation management, construction consulting, and subrogation agent. As the authorized claims agent, Horizon was responsible for investigating claims made on Amwest and evaluating their validity and value. The order of liquidation also provided that all of Amwest's bond obligations were to be canceled 30 days from the date of entry of the order. Thus, the cancellation date for the lease bonds at issue in this case was July 6, 2001.

On June 8, 2001, a document entitled "Notice of Legal Rights and Obligations" was sent to all bond obligees. This document, among other things, informed the bond obligees that an order to liquidate Amwest had been entered in the district court and listed the name and responsibilities of the Liquidator. This document also stated the relevant cancellation dates of Amwest's bond obligations.

On July 9, 2001, Strategic sent Amwest four letters, each letter referencing one of the four lease bonds. The letters stated that "Saxton, Inc. has failed to perform its obligations under the Lease Agreement and therefore is in default." The letters demanded full payment under each of the corresponding lease

bonds. The only evidence presented in the record that provides any detail with regard to Saxton's alleged default is in the affidavit of David Miller, Strategic's chairman. In his affidavit, Miller testified that Saxton failed to make lease payments on December 1, 2000, and thereafter.

Horizon apparently treated Strategic's notice of default letters as an attempt to serve a claim on Amwest because, on July 30, 2001, Horizon sent Strategic four letters acknowledging receipt of each of Strategic's "notice of claim[s]." Enclosed with the letters were proof of claim forms. Horizon's letters explained that Strategic was to file the proof of claim forms, and supporting documentation, no later than June 7, 2002.

On August 1, 2001, Amwest sent four letters to Strategic, each letter corresponding to one of the four lease bonds. The letter stated that the Liquidator would implement a claims process and that Strategic would be sent a new proof of claim form within 90 days, which form Strategic would also need to complete and file by June 7, 2002. The letter explained that Horizon "will continue to act as the authorized claims adjusting company on all Amwest claims" and that a "Horizon claims representative will continue to investigate your claim."

Miller testified in his affidavit that following receipt of these letters, Strategic contacted Horizon at the telephone number listed on each of Amwest's August 1, 2001, letters, and was told that it could not file a claim until it received the appropriate forms. Miller further testified that sometime between June 7 and June 19, 2002, Strategic received and completed the approved proof of claim forms. The proof of claim forms were filed on June 20, 2002, 13 days after the June 7 bar date. On September 5, Amwest sent Strategic four letters acknowledging the receipt of Strategic's proof of claim forms and informing Strategic that because the proof of claim forms were postmarked after the bar date, the claims would be treated as late-filed claims.

## LIQUIDATOR'S DECISION

On October 31, 2003, the Liquidator denied all Strategic's claims. The Liquidator explained that

> [b]y operation of law, all bonds issued by Amwest . . . were cancelled 30 days after the Order of Liquidation.

Therefore, all bonds were cancelled on July 6, 2001. Notice of default on [these] bond[s] was issued on July 9, 2001, after cancellation of the bond[s]. Therefore, there is no coverage for [these] claim[s].

Strategic filed an objection to the Liquidator's decision. The Liquidator reviewed Strategic's objection and chose not to alter his initial determination.

## REFEREE'S DECISION

Pursuant to Neb. Rev. Stat. § 44-4839(2) (Reissue 2004), whenever objections are filed with a liquidator and the liquidator does not alter his or her denial of the claim, the disputed claim may be referred to a court-appointed referee who submits findings of fact and his or her recommendation. In the present case, the disputed claims were referred to the court-appointed referee. The district court approved and adopted "procedures" to be used to govern the referee's participation in the administration of the claims against Amwest in accordance with § 44-4839(2).

Because all four of Strategic's claims involved similar facts, the referee consolidated the claims and issued a single report in which he recommended that all of the claims be denied. In denying the claims, the referee stated that pursuant to Neb. Rev. Stat. § 44-4835(2) (Reissue 2004), "the inclusion of late filed claims in the claims adjudication process is wholly within the discretion of the Liquidator; the Liquidator has exercised his discretion to accept [Strategic's] claims as Class 6 (Late Filed Claims). The [District] Court should not review this action of the Liquidator." The referee continued, explaining:

> The . . . Liquidator's determination that no amount should be allowed for [Strategic's] claims is supported by the Hearing Record. The Notices of Default are without any specificity. If Saxton was in default of its performance obligations under the Lease Agreements, the Lease Agreements required notice to Saxton and an opportunity to cure the default. The nature of Saxton's claimed defaults is not identified. It is reasonable to conclude that upon learning of Amwest's liquidation, [Strategic] sought a complete forfeiture of the Lease Bonds. The obligations [sic] of Amwest was to assure Saxton's performance; there is

nothing in the Hearing Record to support a conclusion that Saxton failed to perform any of its lease obligations while the Bonds were in-force.

Strategic disagreed with the referee's report and filed its objections to the referee's findings in the district court.

### DISTRICT COURT'S DECISION

The district court found that all of the claims were properly denied. The court stated that "the Referee's determination [was] supported by competent, material and substantive evidence appearing in the record and was made in accordance with the Procedures."

The court further explained that "the in-force obligations of Amwest were cancelled no later than July 6 2001" but that Strategic sent its written notices on July 9, 2001. The court stated that "the claim file contains no evidence that the that [sic] Saxton failed to perform any of its lease obligations while the bonds were in force." Finally, the court noted that "the record makes clear that the Claimant's claim was received after the Claims bar date of June 7, 2002." And "even if any amount was allowed, the Claim was properly characterized as a Class 6 (late filed) claim." Strategic appeals.

### ASSIGNMENTS OF ERROR

On appeal, Strategic assigns, restated and renumbered, that the district court erred in (1) denying its objection to the referee's report and (2) concluding that Strategic's claims were not timely filed.

### STANDARD OF REVIEW

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[1]

■ An insurer liquidation proceeding lies in equity, and an appellate court reviews a liquidation court's determination of claims disputes de novo on the record.[2]

---

[1] *Didier v. Ash Grove Cement Co.*, 272 Neb. 28, 718 N.W.2d 484 (2006).

[2] *State ex rel. Wagner v. Amwest Surety Ins. Co., post* p. 121, 738 N.W.2d 813 (2007).

## ANALYSIS

### STRATEGIC'S FAILURE TO PROVIDE NOTICE

Strategic's arguments on appeal are primarily concerned with the conclusion that its claims were late filed. We do not reach those issues, however, because of a more fundamental problem with Strategic's claims. On our de novo review of the record, we agree with Amwest's argument that Strategic's claims were correctly denied because Strategic failed to comply with the express conditions set forth in each of the lease bonds before the lease bonds were canceled.

■■■ Nebraska adheres to the rule of strict construction of guaranty contracts.[3] A guaranty is interpreted using the same general rules as are used for other contracts.[4] When the meaning of the contract is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.[5] We have further explained that

> "[A] surety cannot be held beyond the precise terms of his contract. Any intention on the part of the surety to assume a further and continued liability must be found in the words of the contract made. It is not a matter of inference, but of express statement. The liability of a surety, therefore, is measured by, and will not be extended beyond, the strict terms of his contract."[6]

In short, Amwest's obligations as a surety are strictly governed by the express terms of the lease bonds. Accordingly, for Amwest to be liable under the terms of the lease bonds, Strategic must comply with all of the necessary preconditions for payment.

---

[3] *Federal Deposit Ins. Corp. v. Heyne*, 227 Neb. 291, 417 N.W.2d 162 (1987).

[4] *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

[5] *Federal Deposit Ins. Corp., supra* note 3.

[6] *Farmers Union Co-op Assn. v. Mid-States Constr. Co.*, 212 Neb. 147, 153, 322 N.W.2d 373, 377 (1982).

We addressed a similar issue in *Dockendorf v. Orner.*[7] In *Dockendorf*, the United States Fidelity and Guaranty Company (U.S.F.&G.), as surety, and Donald Moran, as principal, entered into a surety agreement. For approximately 10 months, Moran and his agents purchased cattle from Dale Dockendorf. Approximately 6 months after the final purchase, Dockendorf sued Moran, his agents, and U.S.F.&G., alleging that Moran had defaulted on payments owed and that U.S.F.&G., as surety, was liable for the principal's default up to the maximum amount under the bond.

Moran's surety bond provided in relevant part that "'[a]ny claim for recovery on this bond must be filed in writing with either the Surety, or the Trustee . . . . All claims must be filed within 120 days of the date of the transaction on which claim is made.'"[8] The surety bond further provided that the surety "'shall not be liable to pay any claim for recovery on this bond if it is not filed in writing within 120 days from the date of the transaction on which the claim is based . . . .'"[9] The bond also required that a lawsuit based on the claim be filed no less than 180 days or more than 18 months after the transaction.[10] Dockendorf had not filed a claim within 120 days, and thus, Dockendorf's claim was denied.[11]

In denying the claim, we explained that the bond contained two conditions: The first condition required a timely filing of a claim in writing, and the second condition related to the time-frame within which litigation must be commenced.[12] We concluded that "[i]t is clear that in the present case [Dockendorf] failed to file a claim in writing within 120 days of the date of the transaction on which claim is made. Since [Dockendorf] failed to satisfy the first condition, recovery under the bond will

---

[7] *Dockendorf v. Orner*, 206 Neb. 456, 293 N.W.2d 395 (1980).

[8] *Id.* at 459, 293 N.W.2d at 397.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Dockendorf, supra* note 7.

not be allowed."[13] In other words, because the conditions to payment had not been satisfied, the surety's obligation to pay did not arise.

■ Courts in other jurisdictions have similarly concluded that when a guaranty contract contains express conditions, those conditions must be strictly complied with before the guarantor is liable.[14] Since the foundation of the creditor's rights is the guarantor's contract, it follows that his rights are restricted by the terms of the contract and any conditions, express or implied, affecting them.[15] The guarantor may limit his liability by whatever conditions he may see fit to impose, and failure to comply with them will preclude recourse to him.[16]

■ Where a guarantor attaches a certain condition or conditions to the agreement, such condition or conditions must be construed in favor of the guarantor, and the failure of a creditor to strictly comply with any condition or conditions invalidates the guaranty.[17] A stipulation for notice of default is a condition of liability which may always be imposed.[18] Where a contract of guaranty specifically requires notice of default, the failure to give such notice discharges the guarantor's obligations.[19]

In the present case, each of the four lease bonds contained explicit conditions that must be complied with before Amwest's liability under the agreements would arise. As set forth more fully above, three of the four lease bonds required Strategic to provide Amwest written notice of Saxton's default as a condition precedent to Strategic's right to payment under the lease bonds. The undisputed facts, however, reveal that Amwest did

---

[13] *Id.* at 461, 293 N.W.2d at 398.

[14] See, e.g., *Lee v. Vaughn*, 259 Ark. 424, 534 S.W.2d 221 (1976); *Yama v. Sigman*, 114 Colo. 323, 165 P.2d 191 (1945); *Electric Storage Battery Co. v. Black*, 27 Wis. 2d 366, 134 N.W.2d 481 (1965).

[15] *Barati v. M.S.I. Corp. et al.*, 212 Pa. Super. 536, 243 A.2d 170 (1968).

[16] *Lee, supra* note 14.

[17] *Id.*

[18] *Id.*; *Barati, supra* note 15.

[19] *Lee, supra* note 14.

not receive notice of Saxton's default until after the lease bonds were canceled.

The first time Amwest received notice of any alleged default by Saxton was on July 9, 2001. That was the earliest possible date Amwest's liability could have arisen. However, pursuant to the liquidation order, the lease bonds had been terminated 3 days earlier. Amwest's obligation to pay did not arise before the lease bonds had been terminated. Strategic's claims for payment under these three lease bonds were correctly denied.

Strategic also failed to comply with the express terms of the remaining lease bond. Amwest's obligation to pay, pursuant to that bond, did not arise until Strategic had given Saxton written notice of its default and an opportunity to cure the default. But our de novo review of the record reveals no evidence to show that Strategic complied with these conditions by sending written notice of the alleged default to Saxton or any evidence that Saxton was ever given an opportunity to cure the alleged default. Strategic has failed to prove that it was entitled to any payment from Amwest under the remaining lease bond.

Strategic claims that notwithstanding the fact that the lease bonds have now been terminated, the alleged defaults took place before the lease bonds were canceled and that therefore, Amwest remains obligated to pay. In support of this argument, Strategic relies on cases dealing with occurrence-based insurance policies. Strategic contends that under occurrence policies, if the event insured against—i.e., the occurrence—takes place within the policy period, regardless of when a claim is made, the policy provides coverage.

However, Strategic's reliance on cases relating to occurrence policies is misplaced. The contracts at issue in this case are guaranty contracts, not insurance liability policies. As a guaranty contract, the liability of the guarantor is limited to the precise terms used in the contract.[20] Before Amwest's liability under the lease bonds arose, certain conditions had to be satisfied. Strategic did not comply with those provisions while the lease bonds were in force.

---

[20] See *Federal Deposit Ins. Corp., supra* note 3.

Strategic also argues that while the lease bonds do require written notice of default to Amwest, this has never been asserted as a basis for denying Strategic's claims and, therefore, cannot be a basis now. Strategic's argument is without merit. In denying Strategic's claims, the Liquidator explained that

> [b]y operation of law, all bonds issued by Amwest . . .. were cancelled 30 days after the Order of Liquidation. Therefore, all bonds were cancelled on July 6, 2001. Notice of default on [these] bond[s] was issued on July 9, 2001, after cancellation of the bond[s]. Therefore, there is no coverage for [these] claim[s].

Strategic's failure to satisfy the conditions of the lease bonds was clearly relied upon by the Liquidator, and Strategic has failed to demonstrate error on this basis for denying its claims.

In sum, on our de novo review, we conclude that Strategic has failed to comply with the express conditions found in each of the four lease bonds while the lease bonds were in effect. Accordingly, the Liquidator, the referee, and the district court correctly concluded that Strategic was not entitled to payment under any of the lease bonds. Having determined that Strategic's claims were properly denied for failure to comply with the express conditions of the lease bonds, we need not address Strategic's remaining assignments of error.

## CONCLUSION

The referee and the district court correctly denied Strategic's claims because Strategic failed to satisfy the conditions set forth in the lease bonds before the lease bonds were canceled. The judgment of the district court is affirmed.

AFFIRMED.

McCORMACK, J., not participating.